**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY** | § § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § § | **Civil Action No. _____** |
| **MEGALOMEDIA, INC.,** **MEGALOMEDIA STUDIOS, LLC,** **MEGALOMEDIA, LLC,** **MANSFIELD FILMS, LLC, and** **DBA HOLDINGS, LLC** | § § § § § § § § | |
| *Defendants.* | § § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW COMES** Plaintiff Philadelphia Indemnity Insurance Company (PIIC) and represents to the Court as follows:

## I.
## INTRODUCTION

1.1     This is an action for declaratory judgment to determine whether Philadelphia Indemnity Insurance Company has a duty to defend and/or indemnify Defendant Megalomedia, Inc., Megalomedia Studios, LLC, Megalomedia, LLC, Mansfield Films, LLC, and DBA Holdings, LLC (collectively, "Megalomedia"), under liability policies of insurance for claims asserted in a series of underlying lawsuits: (1) *David Bolton v. Megalomedia, Inc., Megalomedia Studios, LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-09423, pending in the 165th Judicial District Court in Harris County, Texas (the "Bolton Lawsuit"); (2) *Karen Sue Bonner,*

*James Bonner, Sr., Tera Ann Shumaker, as Personal Representative of the Estate of James "L.B." Bonner, Jr. v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-03939, pending in the 55th Judicial District Court in Harris County, Texas (the "Bonner Lawsuit"); (3) *Gina Krasley v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-09972, pending in the 55th Judicial District Court in Harris County, Texas (the "Krasley Lawsuit"); and (4) *Maja Radanovic v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-09500, pending in the 234th Judicial District Court in Harris County, Texas (the "Radanovic Lawsuit"); (5) Jeanne Covey and Barbara J. Fallaw *v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-11846, pending in the 125th Judicial District Court in Harris County, Texas (the "Covey Lawsuit"); (6) Nicole Lewis *v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-20065, pending in the 190th Judicial District Court in Harris County, Texas (the "Lewis Lawsuit"); (7); Dorothy Perkins *v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-15375, pending in the 129th Judicial District Court in Harris County, Texas (the "Perkins Lawsuit"); (8) Annjeannette Whaley *v. Megalomedia, Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC.,* Cause No. 2020-20046, pending in the 127th Judicial District Court in Harris County, Texas (the "Whaley Lawsuit"); (9) *Alicia Kirgan v. Megalomedia, Inc., Megalomedia, LLC, Mansfield Films, LLC, and DBA Holdings, LLC,* Cause No. 2020-24130, pending in the 133rd Judicial District Court in Harris County, Texas (the "Kirgan Lawsuit"); and (10) *Matthew Ventress a/k/a Destiness Lashaee v. Megalomedia, Inc., Megalomedia, LLC, Mansfield Films, LLC, and DBA Holdings, LLC,* Cause

No. 2020-24109, pending in the 152nd Judicial District Court in Harris County, Texas (the "Ventress Lawsuit").

## II.
## PARTIES

2.1     Plaintiff Philadelphia is a citizen of Pennsylvania, being an insurance company formed under Pennsylvania law with its principal place of business at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004.

2.2     Defendant Megalomedia, Inc., is a Texas for-profit corporation doing business in the state of Texas with its principal place of business in Travis County, Texas. It may be served through its registered agent for process: Jonathan Nowzaradan, 901 Barton Springs Road, Austin, Texas 78704.

2.3     Defendant Megalomedia Studios, LLC, is a Texas limited liability company doing business in the state of Texas with its principal place of business in Travis County, Texas. It may be served through its registered agent for process: Michael Saleman, 100 Congress Ave., #100, Austin, Texas 78701.

2.4     Defendant Megalomedia, LLC, does not appear to be an entity in existence in Texas.

2.5     Defendant Mansfield Films, LLC, is a Texas limited liability company doing business in the state of Texas with its principal place of business in Travis County, Texas. It may be served through its registered agent for process: Michael Saleman, 100 Congress Ave., #100, Austin, Texas 78701.

2.6     Defendant DBA Holdings, LLC, is a Texas limited liability company doing business in the state of Texas with its principal place of business in Travis County, Texas. It may

---

**COMPLAINT FOR DECLARATORY JUDGMENT**                                                          3

be served through its registered agent for process: Michael Saleman, 100 Congress Ave., #100, Austin, Texas 78701.

2.7    The Court has personal jurisdiction over Defendants because they are residents of the state of Texas.

## III.
## JURISDICTION AND VENUE

3.1    This Court has jurisdiction pursuant to 28 U.S.C. §1332. The parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.2    Venue is proper in the Unites States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim for declaratory relief occurred there.

## IV.
## FACTUAL ALLEGATIONS AGAINST MEGALOMEDIA

4.1    The Megalomedia defendants are defendants in the underlying lawsuits brought in connection with Megalomedia's alleged role in the production and filming of a reality tv show, much of which was filmed in Houston, Texas, focusing on and following the lives of various participants including David Bolton, James "L.B." Bonner, Gina Krasley, Maja Radanovic, Jeanne Covey, Nicole Lewis, Dorothy Perkins, and Annjeannette Whaley.

### _The Bolton Lawsuit_

4.2    The petition in the Bolton Lawsuit asserts that Bolton participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.3    The petition asserts that Bolton appeared in Season 6, Episode 10 of the show, which first aired in 2018 and continues to air.

4.4     The petition asserts that at the time, Bolton weighed more than 800 pounds and, as part of his participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Bolton under an extreme weight-loss diet and performed bariatric surgery, resulting in significant weight loss.

4.5     The petition asserts that Megalomedia influenced the care, or lack thereof, Bolton received during the filming of the reality show, which adversely impacted his mental and psychological health.

4.6     The petition asserts that that the filming of the reality show required a strict schedule and compliance with all of Megalomedia's wishes for the entertainment value of the show.

4.7     The petition asserts that Megalomedia's manipulation of Bolton and his family for dramatic purposes took a tremendous psychological toll.

4.8     The petition asserts that Megalomedia aggravated his mental health while undergoing significant weight loss and changes for the show.

4.9     The petition asserts that Megalomedia promised to pay for all medical bills associated with his care and surgery but ultimately failed to do so, thereby adding to his mental distress.

4.10    Bolton asserts causes of action for negligence, intentional infliction of emotional distress, and promissory estoppel.

4.11    None of the claims raised in the Bolton Lawsuit are covered under the Philadelphia policies.

*The Bonner Lawsuit*

4.12    The petition in the Bonner Lawsuit asserts that Bonner participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.13    The petition asserts that Bonner appeared in Season 6, Episode 10 of the show, which first aired in 2018 and continues to air.

4.14    The petition asserts that at the time, Bonner weighed more than 600 pounds and, as part of his participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Bonner under an extreme weight-loss diet and performed bariatric surgery, resulting in significant weight loss.

4.15    The petition asserts that Megalomedia insisted Bonner consume significant amounts of food on camera and required Bonner to change his appearance in order to enhance the dramatic elements of the reality show.

4.16    The petition asserts that Megalomedia created dramatic tension between Bonner and his mother for theatrical effect.

4.17    The petition asserts that Megalomedia's manipulation of Bonner and his family for dramatic purposes took a tremendous psychological toll.

4.18    The petition asserts that Bonner expressed suicidal thoughts to Megalomedia on multiple occasions, which Megalomedia recognized but did nothing to address.

4.19    The petition asserts that Megalomedia promised to pay for all medical bills associated with his surgery but ultimately failed to do so, thereby adding to his mental distress.

4.20    The petition asserts that Bonner committed suicide on August 12, 2018.

4.21    The petition asserts that Megalomedia's drive to boost ratings for the show and create drama killed Bonner.

4.22    Bonner asserts causes of action for negligence and gross negligence, and wrongful death and survivorship.

4.23    None of the claims raised in the Bonner Lawsuit are covered under the Philadelphia policies.

### *The Krasley Lawsuit*

4.24    The petition in the Krasley Lawsuit asserts that Krasley participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.25    The petition asserts that Krasley appeared in Season 8, Episode 5 of the show, which first aired in 2020 and continues to air.

4.26    The petition asserts that at the time, Krasley weighed 588 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Krasley under an extreme weight-loss diet.

4.27    The petition asserts that Megalomedia required Krasley to eat excessive amounts of food and created a narrative that portrayed Krasley as someone who would not follow the diet.

4.28    The petition asserts that Megalomedia manipulated Krasley for dramatic purposes, which adversely impacted her psychological health.

4.29    Krasley asserts causes of action for negligence and intentional infliction of emotional distress.

4.30    None of the claims raised in the Krasley Lawsuit are covered under the Philadelphia policies.

*The Radanovic Lawsuit*

4.31    The petition in the Radanovic Lawsuit asserts that Radanovic participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.32    The petition asserts that Radanovic appeared in Season 7, Episode 8 of the show, which first aired in 2019 and continues to air.

4.33    The petition asserts that at the time, Radanovic weighed more than 600 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Radanovic under an extreme weight-loss diet and performed bariatric surgery, resulting in significant weight loss.

4.34    The petition asserts that that the filming of the reality show required a strict schedule and compliance with all of Megalomedia's wishes for the entertainment value of the show.

4.35    The petition asserts that Megalomedia's manipulation of Radanovic and her family was for dramatic purposes and took a tremendous toll on her psychological health.

4.36    The petition asserts that Megalomedia promised to pay for all medical bills associated with her care and surgery but ultimately failed to do so, thereby adding to her mental distress.

4.37    The Radanovic Lawsuit asserts causes of action for negligence, intentional infliction of emotional distress, and promissory estoppel.

4.38    None of the claims raised in the Radanovic Lawsuit are covered under the Philadelphia policies.

*The Covey Lawsuit*

4.39    The petition in the Covey Lawsuit asserts that Covey participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.40    The petition asserts that Covey appeared in Season 7, Episode 11 of the show, which first aired in 2019 and continues to air.

4.41    The petition asserts that at the time, Covey weighed 702 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Covey under an extreme weight-loss diet.

4.42    The petition asserts that Megalomedia required Covey to eat excessive amounts of food and created a narrative that portrayed Covey as someone who would not follow the diet.

4.43    The petition asserts that Covey's father died during after filming for the show began, causing her emotional distress, prompting Covey to ask Megalomedia to discontinue filming.

4.44    The petition asserts that, despite Covey's request, Megalomedia insisted that filming continue and threatened a lawsuit if Covey would not comply with their production demands.

4.45    The petition asserts that Megalomedia's threats and demands worsened her already weakened emotional state.

4.46    The petition asserts that Covey's mother, Ms. Fallaw, became an integral part of the story created by Megalomedia for the reality show.

4.47    The petition asserts that Fallaw agreed to participate in additional filming of Covey's episodes in exchange for Megalomedia paying for Fallaw's hernia surgery.

**COMPLAINT FOR DECLARATORY JUDGMENT**                                                    **9**

4.48     The petition asserts that despite these promises, Megalomedia failed to pay for the hospital bill Fallaw incurred with the hernia surgery.

4.49     Covey asserts causes of action for negligence and gross negligence and intentional infliction of emotional distress; Fallaw asserts intentional infliction of emotional distress and promissory estoppel.

4.50     None of the claims raised in the Covey Lawsuit are covered under the Philadelphia policies.

*The Lewis Lawsuit*

4.51     The petition in the Lewis Lawsuit asserts that Lewis participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.52     The petition asserts that Lewis appeared in Season 5, Episode 9 of the show, which first aired in 2017 and continues to air.

4.53     The petition asserts that Lewis was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who performed gastric sleeve surgery on Lewis in January 2017, as chronicled on the reality show.

4.54     The petition asserts that after Lewis' initial episode aired, Megalomedia promised to pay for a skin removal surgery and 6 months' rent on an apartment in Houston if she agreed to film another follow-up episode in 2019.

4.55     The petition asserts that the follow-up episode was a scripted event.

4.56     The petition asserts that the skin removal surgery was never performed, and that Megalomedia repeatedly expected Lewis to drop everything on a moment's notice for they arrived.

4.57    The petition asserts that instead of providing the mental health assistance Lewis needed, that Megalomedia manipulated Lewis for dramatic purposes which had a tremendous psychological toll.

4.58    Lewis asserts causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud.

4.59    None of the claims raised in the Lewis Lawsuit are covered under the Philadelphia policies.

*The Perkins Lawsuit*

4.60    The petition in the Perkins Lawsuit asserts that Perkins participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.61    The petition asserts that Perkins appeared in Season 4, Episode 6 of the show, which first aired in 2016 and continues to air.

4.62    The petition asserts that Perkins was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Perkins under an extreme weight-loss diet so she could ultimately be a candidate for surgery.

4.63    The petition asserts that Megalomedia promised to pay for Perkins' gastric sleeve surgery, gastric bypass surgery, and skin removal surgery as an inducement to be a participant on the show.

4.64    The petition alleges that despite these promises, Megalomedia did not pay these charges, thereby subjecting Perkins to bill collectors for payment of the medical treatments.

4.65    The petition asserts that Perkins was placed on an extreme weight-loss diet, but Megalomedia created a narrative where Perkins would not follow the diet.

4.66    The petition asserts that Megalomedia forced Perkins to eat excessive amounts of unhealthy and fattening foods, which resulted in her being hospitalized for monitoring.

4.67    The petition asserts that Megalomedia broadcast embarrassing moments for Perkins and forced arguments between Perkins and her family for dramatic purposes.

4.68    The petition asserts that instead of providing the mental health assistance Perkins needed, that Megalomedia manipulated Perkins for dramatic purposes which had a tremendous psychological toll.

4.69    Perkins asserts causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud.

4.70    None of the claims raised in the Perkins Lawsuit are covered under the Philadelphia policies.

*The Whaley Lawsuit*

4.71    The petition in the Whaley Lawsuit asserts that Whaley participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.72    The petition asserts that Whaley appeared in Season 7, Episode 14 of the show, which first aired in 2019 and continues to air.

4.73    The petition asserts that at the time, Whaley weighed more than 600 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Whaley under an extreme weight-loss diet.

4.74    The petition asserts that Megalomedia promised to pay all medical bills associated with Whaley's surgery and post-surgery care but failed to do so, subjecting her to bill collection efforts.

4.75     The petition asserts that instead of providing the mental health assistance Whaley needed, that Megalomedia manipulated Whaley for dramatic purposes which had a tremendous psychological toll.

4.76     Whaley asserts causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud.

4.77     None of the claims raised in the Whaley Lawsuit are covered under the Philadelphia policies.

*The Kirgan Lawsuit*

4.78     The petition in the Kirgan Lawsuit asserts that Kirgan participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.79     The petition asserts that Kirgan appeared in Season 6, Episode 3 of the show, which first aired in 2018 and continues to air.

4.80     The petition asserts Kirgan was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who performed gastric-sleeve surgery on her in December 2017.

4.81     The petition asserts that Megalomedia manipulated Kirgan to do things she didn't want to do, such as eat a "cheat meal" to be used as a "flashback scene," but the meal would be going against her restricted diet.

4.82     The petition asserts that Megalomedia promised to pay all medical bills associated with Kirgan's gastric sleeve surgery in exchange for filming but failed to do so, subjecting her to bill collection efforts for thousands of dollars.

4.83    The petition asserts that Kirgan reached out to the producers about her declining mental health, depression, and anxiety but no mental health assistance was offered, aside from one scripted session with a therapist.

4.84    The petition asserts that the effects of Megalomedia's demands on Plaintiff and manipulation of Kirgan for dramatic purposes took a tremendous psychological toll on her.

4.85    Kirgan asserts causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud.

4.86    None of the claims raised in the Kirgan Lawsuit are covered under the Philadelphia policies.

*The Ventress Lawsuit*

4.87    The petition in the Ventress Lawsuit asserts that Ventress participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by Megalomedia and aired on television.

4.88    The petition asserts that Ventress appeared in Season 7, Episode 10 of the show, which first aired in 2019 and continues to air.

4.89    The petition asserts that Megalomedia promised to pay all charges associated with Ventress' medical care and treatment with Dr. Nowzaradan, including any surgeries.

4.90    The petition asserts that Megalomedia promised to pay for mental health treatment, which Dr. Nowzaradan recommended for Ventress, but Megalomedia instead provided only one therapy session, which was only done so it could be filmed and be part of the show.

4.91    The petition asserts that the effects of Megalomedia's demands on Plaintiff and manipulation of Ventress for dramatic purposes took a tremendous psychological toll.

4.92    Ventress asserts causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud.

4.93    None of the claims raised in the Ventress Lawsuit are covered under the Philadelphia policies.

**V.**

**PHILADELPHIA PRIMARY POLICIES**

5.1    Philadelphia issued three successive liability policies (collectively, the "primary policies") to the named insured, Megalomedia, Inc., as follows:

PHPK-1759596, effective December 1, 2017 to December 1, 2018;

PHPK-191368, effective December 1, 2018 to December 1, 2019; and

PHPK-2069535, effective December 1, 2019 to December 1, 2020.

5.2    The only Named Insured on the primary policies found on all three policy periods is Megalomedia, Inc.

5.3    The Named Insured Schedule for the second and third policy periods includes Megalomedia, Inc., Mansfield Films, and others entities that are not parties to any of the underlying lawsuits at this time.

5.4    The primary policies contain a Commercial General Liability Coverage Part, which provides coverage for "bodily injury" and "property damage" in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty

---

**COMPLAINT FOR DECLARATORY JUDGMENT**                                    15

to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

\* \* \*

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)  The "bodily injury" or "property damage" occurs during the policy period; and

(3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

\* \* \*

The primary policies contain the following pertinent definitions:

**SECTION V – DEFINITIONS**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

The primary policies each contain a General Liability Deluxe Endorsement, which amends the definition of "bodily injury" above, as follows:

**Section F. Bodily Injury – Mental Anguish**

In **SECTION V – DEFINITIONS**, Paragraph 3. is changed to read:

"Bodily Injury"

a.   Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

b.   Except for mental anguish, includes death resulting from the foregoing (Item **a.** above) at any time.

\* \* \*

The primary policies each contain the following pertinent endorsements:

**EXCLUSION – DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**
Excludes the production of, filming or distribution of pornographic materials. Excludes any/all reality shows. Excludes rental/loan of insureds equipment or equipment leased by the insured to 3rd party.

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
The following exclusion is added to paragraph 2. Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out

---

**COMPLAINT FOR DECLARATORY JUDGMENT**                                                                 **17**

of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a location is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location."

* * *

The primary policies also contain the following pertinent endorsements:

**EXCLUSION – DESIGNATED PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL COVERAGE PART

**SCHEDULE**

| Description Of Professional Services: |
|---|
| **1.** Excludes any/all media professional liability |
| **2.** |
| **3.** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability. . .:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

The primary policies also contain the following pertinent endorsements:

**EXCLUSION – PERFORMER(S)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily Injury" to any person while performing in any exhibition, demonstration, or special event sponsored by you.

* * *

5.5     The primary policies provide no coverage for Megalomedia for the claims alleged in the underlying lawsuits.

## VI.
## NO COVERAGE UNDER THE PRIMARY POLICIES

6.1     Philadelphia incorporates by reference the allegations of the preceding paragraphs.

6.2     The underlying lawsuits were brought against five entities: Megalomedia, Inc., Megalomedia Studios, LLC, Megalomedia, LLC, Mansfield Films, LLC, and DBA Holdings, LLC.

6.3     Only Megalomedia, Inc., is a named insured on each of the three primary policies. Mansfield Films is also a named insured for the second and third primary policies. Megalomedia Studios, LLC, Megalomedia, LLC, and DBA Holdings, LLC, are not insureds on any of the policies issued by Philadelphia. As a result, there is no coverage available for Megalomedia Studios, LLC, Megalomedia, LLC, or DBA Holdings, LLC, under any of the Philadelphia policies.

6.4     The primary policies provide coverage for "bodily injury" or "property damage" caused by an "occurrence." None of the underlying lawsuits allege an accident was the cause of any of the conduct alleged to have harmed Bolton, Bonner, Krasley, Radanovic, Covey, Fallaw, Lewis, Perkins, Whaley, Kirgan, or Ventress. Thus, these claims are precluded from coverage.

6.5     The exclusions of the primary policies preclude coverage for any damage that was an expected, intended, or foreseeable result of the insured's conduct. The Bolton, Krasley, Radanovic, Covey, Lewis, Perkins, Whaley, Kirgan, and Ventress Lawsuits expressly assert intentional infliction of emotional distress, and the Bonner Lawsuit asserts that Megalomedia created dramatic tension and manipulated Bonner and his family, which resulted in harm to his mental health. These claims are precluded from coverage.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**                                              **19**

6.6    The exclusion based on Designated Professional Services precludes coverage for any "bodily injury," "property damage," or "personal and advertising injury" due to the rendering of or failure to render any professional service. As a result, any allegations of harm due to a failure to provide mental health assistance, as alleged in the underlying lawsuits, is precluded from coverage.

6.7    The Designated Ongoing Operations Exclusion precludes coverage for allegations involving conduct complained of that arose from, resulted from, and/or was in direct relation to the filming and production of "My 600-lb Life." The exclusion expressly excludes coverage for "any/all reality shows." Therefore, no coverage is available for the claims asserted in the Bolton, Bonner, Krasley, Radanovic, Covey, Lewis, Perkins, Whaley, Kirgan, or Ventress Lawsuits.

6.8    The exclusion for Performers applies to exclude coverage for "bodily injury" or "property damage" that occurred while performing in any exhibitions, demonstrations, or special events for Megalomedia. To the extent the claims raised against the Megalomedia involve the foregoing actions, there is no coverage for these claims.

6.9    The promissory estoppel claims alleged by Bolton, Radanovic, Fallaw, Lewis, Perkins, Whaley, Kirgan, and Ventress do not constitute "bodily injury" or "property damage" as those terms are defined by the primary policies. Therefore, no coverage is available for these claims.

6.10    The fraud claims alleged by Lewis, Perkins, Whaley, Kirgan, and Ventress do not constitute "bodily injury" or "property damage" as those terms are defined by the primary policies. Thus, no coverage is available for these claims.

## VII.
## PHILADELPHIA UMBRELLA POLICIES

7.1     In addition to the the primary policies, Philadelphia issued umbrella policies (collectively, the "umbrella policies") to the named insured Megalomedia, Inc. as follows:

PHUB611489, effective December 1, 2017 to December 1, 2018;

PHUB656486, effective December 1, 2018 to December 1, 2019; and

PHUB702969, effective December 1, 2019 to December 1, 2020.

7.2     The umbrella policies are for the same policy periods and contain the same or similar insuring agreement and definitions as the primary policies.

7.3     The umbrella policies provide no coverage for Megalomedia for the claims alleged in the underlying lawsuits, as they follow form to the primary policies.

7.4     The umbrella policies contain the following:

### GENERAL LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

This policy is intended to include the Commercial General Liability Coverage Part, but only to the extent that coverage is provided for by the Commercial General Liability insurance listed in the Schedule of Underlying Insurance. The terms and conditions of the "underlying insurance" are made a part of this policy, except with respect to:
**1.**   Any contrary provision contained in this policy; or

**2.**   Any provision in this policy for which a similar provision is not contained in "underlying insurance." With respect to the exceptions stated above, the provisions of this policy will apply.

Any per location or per project aggregate limit of insurance that is extended in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance will not apply to the coverage provided by this endorsement.

* * *

## VIII.
## NO COVERAGE UNDER THE UMBRELLA POLICIES

8.1     Philadelphia incorporates by reference the allegations of the preceding paragraphs.

8.2     The provisions of the primary policies apply to the umbrella policies. As a result, the same interpretations applied to the primary policies to preclude coverage apply equally to preclude coverage under the umbrella policies. Thus, there is no coverage for the allegations contained in the underlying lawsuits under the umbrella policies.

## IX.
## BASIS FOR DECLARATORY RELIEF

9.1     The petitions in the underlying lawsuits do not allege facts within the scope of coverage, nor do they assert an occurrence within the policy period. As a result, there is no coverage under the Philadelphia policies issued to Megalomedia for the claims raised in the Underlying Lawsuits and similar actions. PIIC has no duty to defend or indemnify Megalomedia.

## X.
## RESERVATION REGARDING AMENDMENT

10.1     PIIC reserves the right to amend as necessary to add to this action additional claims that may be made against Megalomedia defendants.

## XI.
## RELIEF SOUGHT

11.1     PIIC seeks a declaration that the clear and unambiguous terms of the policy apply to preclude coverage for all of the allegations in the underlying lawsuits, that PIIC owes no defense to Megalomedia, and that PIIC owes no indemnity for any liability that may be assessed against Megalomedia in the Underlying Lawsuits or in any similar actions.

Respectfully submitted,

TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP

 */s/ Stephen A. Melendi*

Stephen A. Melendi – Attorney-in-Charge
State Bar No. 24041468
Southern District Bar No. 38607
stephenm@tbmmlaw.com
Matthew Rigney
State Bar No.  24068636
Southern District Bar No. 2870042
mattr@tbmmlaw.com
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone:      214-665-0100
Facsimile:      214-665-0199
**ATTORNEYS FOR PLAINTIFF**
**PHILADELPHIA INDEMNITY INSURANCE**
**COMPANY**