IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**Philadelphia Indemnity Insurance
Company,**

   Plaintiff,

               **Civil Action No. 4:20-cv-01644**

v.

**Megalomedia, Inc., _et al._,**

   Defendants.

## DEFENDANTS' ANSWER AND COUNTERCLAIM

Defendants and Counterclaimants Megalomedia, Inc. ("Megalomedia"), Megalomedia Studios, LLC, Mansfield Films, LLC ("Mansfield Films"), and DBA Holdings, LLC (collectively, "Defendants")[1] file this Answer and Counterclaim to the Complaint for Declaratory Judgment ("Complaint") filed by Philadelphia Indemnity Insurance Company ("Plaintiff," "Philadelphia," or the "Insurer").

### I.  ANSWER

1.1  Defendants admit that the Insurer seeks a declaratory judgment as alleged in Paragraph 1.1. of the Complaint. Defendants deny that the "underlying lawsuits" continue to exist in the forms described in the Complaint at Paragraph 1.1, but admit that, at the time the Complaint was filed, the "underlying lawsuits" listed in Paragraph 1.1 were styled and pending as alleged in Paragraph 1.1. Defendants deny that Paragraph 1.1 accurately reflects the existence or non-existence of the underlying lawsuits at present, or the current docket numbers, styles, or

---

[1] Defendant Megalomedia LLC does not exist.

courts of the underlying lawsuits. Defendants otherwise deny the remaining allegations in Paragraph 1.1.

2.1     Defendants are without knowledge or information sufficient to admit or deny the allegations in Paragraph 2.1.

2.2     Defendants admit the allegations in Paragraph 2.2.

2.3     Defendants admit the allegations in Paragraph 2.3.

2.4     Defendants admit that Megalomedia, LLC does not appear to be an entity in existence in Texas, as alleged in Paragraph 2.4 of the Complaint. Defendants specifically deny that Megalomedia, LLC is a proper Defendant because, upon information and belief, Megalomedia, LLC is a non-existent entity.

2.5     Defendants admit the allegations in Paragraph 2.5.

2.6     Defendants admit the allegations in Paragraph 2.6.

2.7     Paragraph 2.7 of the Complaint contains jurisdictional allegations to which admission or denial are not required. To the extent that a response is required, Defendants, upon information and belief, deny that Megalomedia, LLC is a resident of Texas. Defendants admit that Defendants Megalomedia, Inc., Megalomedia Studios, LLC, Mansfield Films, LLC, and DBA Holdings, LLC are residents of the state of Texas over which this Court has personal jurisdiction.

3.1     Paragraph 3.1 of the Complaint contains jurisdictional allegations to which admission or denial are not required. To the extent that a response is required, Defendants admit that this Court has subject matter jurisdiction over this matter.

3.2     Paragraph 3.2 of the Complaint contains venue allegations to which admission or denial are not required. To the extent that a response is required, Defendants admit that venue is proper in this Court.

4.1     As to the allegations in Paragraph 4.1 of the Complaint, Defendants deny that the "underlying lawsuits" continue to exist in the form described in the Complaint at Paragraph 1.1 and incorporated by reference into the allegations in Paragraph 4.1. Defendants deny that all De-

4816-5844-9349

fendants named in the Insurer's Complaint as the "Megalomedia defendants" remain defendants in the underlying lawsuits described in the Complaint, but admit that, at the time the Complaint was filed, claims in the "underlying lawsuits" had been brought against the "Megalomedia defendants," as alleged in Paragraph 4.1.   Defendants admit that the underlying lawsuits were brought in connection with the production and filming of a reality tv show that followed the lives of various participants as alleged in Paragraph 4.1. Defendants admit that at the time the Complaint was filed, participants at issue in the underlying lawsuits included those listed in Paragraph 4.1 of the Complaint, but deny that all of the listed participants continue to be parties to, or subjects of, the underlying litigation in its current form. Defendants admit that parts of the tv show were filmed in Houston, Texas.  Defendants otherwise deny the remaining allegations set forth in Paragraph 4.1.

4.2     As to the allegations in Paragraph 4.2 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.2: that Bolton participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Bolton Lawsuit defendants and aired on television. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.2.

4.3     As to the allegations in Paragraph 4.3 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.3: that Bolton appeared in Season 6, Episode 10 of the show, which first aired in 2018 and continues to air. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.3.

4816-5844-9349

4.4     As to the allegations in Paragraph 4.4 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.4: that Bolton weighed more than 800 pounds and, as part of his participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Bolton under an extreme weight-loss diet and performed bariatric surgery, resulting in significant weight loss. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.4.

4.5     As to the allegations in Paragraph 4.5 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.5: that (i) the Bolton Lawsuit defendants influenced the care, or lack thereof, Bolton received and (ii) that certain acts or omission adversely impacted Bolton's mental and psychological health.  Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.5.

4.6     As to the allegations in Paragraph 4.6 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.6: that the filming of the reality show required a strict schedule and conformance to all of the Bolton Lawsuit defendants' wishes for the entertainment value of the show. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.6.

4.7     As to the allegations in Paragraph 4.7 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to char-

4

acterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.7, as follows: that the Bolton Lawsuit defendants' manipulation of Bolton and his family for dramatic purposes took a tremendous psychological toll. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.7.

4.8    As to the allegations in Paragraph 4.8 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.8: that Bolton underwent significant weight loss. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.8.

4.9    As to the allegations in Paragraph 4.9 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bolton Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.9: that the Bolton Lawsuit defendants promised to pay for certain medical bills, but did not. Defendants deny that Bolton continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.9.

4.10    As to the allegations in Paragraph 4.10 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that in the original petition in the Bolton Lawsuit, Bolton asserted causes of action for negligence, intentional infliction of emotional distress, and promissory estoppel. Defendants deny that Bolton continues to bring those claims. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.10.

4.11     Defendants deny the allegations in Paragraph 4.11 of the Complaint.

4.12     As to the allegations in Paragraph 4.12 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.12: that Bonner participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Bonner Lawsuit defendants and aired on television. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.12.

4.13     As to the allegations in Paragraph 4.13 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.13: that Bonner appeared in an episode of the show which first aired in 2018 and continues to air. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.13.

4.14     As to the allegations in Paragraph 4.14 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.14: that Bonner weighed more than 600 pounds and, as part of his participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Bolton under an extreme weight-loss diet and performed

bariatric surgery, resulting in significant weight loss. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion.  Defendants otherwise deny the remaining allegations set forth in Paragraph 4.14.

      4.15    As to the allegations in Paragraph 4.15 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.15: that (i) the Bonner Lawsuit defendants insisted Bonner consume significant amounts of food on camera and (ii) the Bonner Lawsuit defendants required Bonner to change his appearance in order to assist with the dramatic elements of the reality show.  Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make those assertions. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.15.

      4.16    As to the allegations in Paragraph 4.16 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.16: that the Bonner Lawsuit defendants created dramatic tension between Bonner and his mother for theatrical effect. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.16.

      4.17    As to the allegations in Paragraph 4.17 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants

admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.17: that the effects of the Bonner Lawsuit defendants' manipulation of Bonner and his family for dramatic purposes, with other factors, took a tremendous psychological toll. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.17.

     4.18    As to the allegations in Paragraph 4.18 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.18: that Bonner expressed suicidal thoughts to the Bonner Lawsuit defendants on multiple occasions. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.18.

     4.19    As to the allegations in Paragraph 4.19 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.19: that the Bonner Lawsuit defendants promised to pay for all charges associated with his surgery but ultimately failed to do so, thereby adding to his mental distress. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.19.

4816-5844-9349

4.20     As to the allegations in Paragraph 4.20 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that in the original petition in the Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.20: that Bonner committed suicide in August of 2018. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.20.

4.21     As to the allegations in Paragraph 4.21 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition Bonner Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.21: that the Bonner Lawsuit defendants' drive to boost ratings and create drama killed Bonner. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.21.

4.22     As to the allegations in Paragraph 4.22 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that causes of action for negligence and gross negligence were asserted in the original petition in the Bonner Lawsuit. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether the Bonner plaintiffs continue to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.22.

4.23     Defendants deny the allegations in Paragraph 4.23 of the Complaint.

4.24     As to the allegations in Paragraph 4.24 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Krasley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.24: that Krasley participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Krasely Lawsuit defendants and aired on television. Defendants deny that Krasley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.24.

4.25     As to the allegations in Paragraph 4.25 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Krasley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.25: that Krasley appeared in Season 8, Episode 5 of the show, which first aired in 2020 and continues to air. Defendants deny that Krasley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.25.

4.26     As to the allegations in Paragraph 4.26 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Krasley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.26: that Krasley weighed 588 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Krasley under an extreme weight-loss diet. Defendants deny that Krasley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.26.

4.27     As to the allegations in Paragraph 4.27 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants

admit that the original petition in the Krasley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.27: that the Krasely Lawsuit defendants required Krasley to eat excessive amounts of food to portray Krasley as someone who would not follow the diet. Defendants deny that Krasley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.27.

4.28    As to the allegations in Paragraph 4.28 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Krasley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.28: that Krasely Lawsuit defendants manipulated Krasley for dramatic purposes, which, with other factors, adversely impacted her psychological health. Defendants deny that Krasley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.28.

4.29    As to the allegations in Paragraph 4.29 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Krasley Lawsuit asserted causes of action for negligence and intentional infliction of emotional distress. Defendants deny that Krasley continues to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.29.

4.30    Defendants deny the allegations in Paragraph 4.30 of the Complaint.

4.31    As to the allegations in Paragraph 4.31 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.31: that Radanovic participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Radanovic Lawsuit defendants

and aired on television. Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.31.

4.32    As to the allegations in Paragraph 4.32 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.32: that Radanovic appeared in Season 7, Episode 8 of the show, which first aired in 2019 and continues to air. Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.32.

4.33    As to the allegations in Paragraph 4.33 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.33: that Radanovic weighed more than 600 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Radanovic under an extreme weight-loss diet and performed bariatric surgery, resulting in significant weight loss.  Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.33.

4.34    As to the allegations in Paragraph 4.34 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.34: that the filming of the television show required a strict schedule and conformance to all of the Radanovic Lawsuit defendants' wishes for the entertain-

12

ment value of the show. Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.34.

4.35    As to the allegations in Paragraph 4.35 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.35: that the effects of the Radanovic Lawsuit defendants' manipulation of Radanovic and her family for dramatic purposes, along with other factors, and took a tremendous psychological on her. Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.35.

4.36    As to the allegations in Paragraph 4.36 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.36: that the Radanovic Lawsuit defendants promised to pay for all medical bills associated with Dr. Nowzaradan's care and surgery but ultimately failed to do so, thereby adding to her mental distress. Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.36.

4.37    As to the allegations in Paragraph 4.37 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Radanovic Lawsuit asserted causes of action for negligence, intentional infliction of emotional distress, and promissory estoppel. Defendants are without knowledge or information sufficient to admit or deny whether Radanovic continues to bring

13

those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.37.

4.38     Defendants deny the allegations in Paragraph 4.38 of the Complaint.

4.39     As to the allegations in Paragraph 4.39 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.39: that Covey participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Covey Lawsuit defendants and aired on television. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.39.

4.40     As to the allegations in Paragraph 4.40 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.40: that Covey appeared in Season 7, Episode 11 of the show, which first aired in 2019 and continues to air. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.40.

4.41     As to the allegations in Paragraph 4.41 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.41: that Covey weighed more than 702 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Covey under an extreme weight-loss diet.  Defendants are

14

without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.41.

4.42    As to the allegations in Paragraph 4.42 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.42: that the Covey Lawsuit defendants required Covey to eat excessive amounts of food to portray Covey as someone who would not follow the diet. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.42.

4.43    As to the allegations in Paragraph 4.43 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.43: that Covey's father died during after filming for the show began, causing her emotional distress. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.43.

4.44    As to the allegations in Paragraph 4.44 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.44: that the Covey Lawsuit defendants insisted that filming continue and threatened a lawsuit if Covey would not comply with their production demands. Defendants are without knowledge or information sufficient to admit or deny whether the Covey

plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.44.

4.45    As to the allegations in Paragraph 4.45 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.45: the Covey Lawsuit defendants' threats and demands worsened her already weakened emotional state. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.45.

4.46    As to the allegations in Paragraph 4.46 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.46: that Covey's mother, Ms. Fallaw, became an integral part of the story created by the Covey Lawsuit defendants. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.46.

4.47    As to the allegations in Paragraph 4.47 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.47: that Fallaw agreed to participate in additional filming of Covey's episodes in exchange for the Covey Lawsuit defendants paying for Fallaw's hernia surgery costs. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.47.

4.48    As to the allegations in Paragraph 4.48 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.48: that despite these promises, the Covey Lawsuit defendants failed to pay for the hospital bill Fallaw incurred with the hernia surgery. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.48.

4.49    As to the allegations in Paragraph 4.49 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Covey Lawsuit asserted, for Covey, causes of action for negligence and gross negligence and intentional infliction of emotional distress, and for Fallaw, causes of action for intentional infliction of emotional distress and promissory estoppel. Defendants are without knowledge or information sufficient to admit or deny whether the Covey plaintiffs continue to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.49.

4.50    Defendants deny the allegations in Paragraph 4.50 of the Complaint.

4.51    As to the allegations in Paragraph 4.51 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.51: that Lewis participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Lewis Lawsuit defendants and aired on television. Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.51.

4816-5844-9349

4.52    As to the allegations in Paragraph 4.52 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.52: that Lewis appeared in Season 5, Episode 9 of the show, which first aired in 2017 and continues to air. Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.52.

4.53    As to the allegations in Paragraph 4.53 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.53: that Lewis was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who performed gastric sleeve surgery on Lewis in January 2017. Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.53.

4.54    As to the allegations in Paragraph 4.54 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.54: after Lewis' initial episode aired, the Lewis Lawsuit defendants promised to pay for a skin surgery and 6 months' rent in Houston if she agreed to film another follow-up episode in 2019.  Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.54.

4.55    As to the allegations in Paragraph 4.55 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants deny that the original petition in the Lewis Lawsuit asserted, that the follow-up episode was a

scripted event, as alleged in Paragraph 4.55. Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.5.

4.56    As to the allegations in Paragraph 4.56 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.56: that the skin surgery was never performed, and that the Lewis Lawsuit defendants expected Lewis to drop everything on a moment's notice when they arrived. Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.56.

4.57    As to the allegations in Paragraph 4.57 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.57: that instead of providing appropriate mental health assistance, that the Lewis Lawsuit defendants manipulated Lewis for dramatic purposes which, with other factors, took a tremendous psychological toll. Defendants deny that Lewis continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.57.

4.58    As to the allegations in Paragraph 4.58 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Lewis Lawsuit asserted causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud. Defendants deny that Lewis continues to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.58.

4.59    Defendants deny the allegations in Paragraph 4.59 of the Complaint.

4.60     As to the allegations in Paragraph 4.60 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.60: that Perkins participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Perkins Lawsuit defendants and aired on television. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.60.

4.61     As to the allegations in Paragraph 4.61 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.61: that Perkins appeared in Season 4, Episode 6 of the show, which first aired in 2016 and continues to air. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.61.

4.62     As to the allegations in Paragraph 4.62 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.62: that Perkins was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Perkins under an extreme weight-loss diet so she could ultimately be a candidate for surgery.  Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.62.

4.63    As to the allegations in Paragraph 4.63 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.63: that the Perkins Lawsuit defendants promised to pay for Perkins' gastric sleeve surgery, gastric bypass surgery, and skin removal surgery as an inducement to appear on the show. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.63.

4.64    As to the allegations in Paragraph 4.64 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.64: that the Perkins Lawsuit defendants did not pay, and that Perkins is now subject to bill collectors for payment of the medical treatments. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.64.

4.65    As to the allegations in Paragraph 4.65 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.65: that Perkins was placed on an extreme weight-loss diet, but the Perkins Lawsuit defendants created a dynamic where Perkins would not follow the diet. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.65.

4816-5844-9349

4.66    As to the allegations in Paragraph 4.66 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.66: that the Perkins Lawsuit defendants forced Perkins to eat excessive amounts of unhealthy and fattening foods, which resulted in her being admitted to a hospital. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.66.

4.67    As to the allegations in Paragraph 4.67 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.67: that the Perkins Lawsuit defendants broadcast embarrassing moments for Perkins and forced arguments between Perkins and her family for dramatic purposes. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.67.

4.68    As to the allegations in Paragraph 4.68 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.68: that instead of providing appropriate mental health assistance, that the Perkins Lawsuit defendants manipulated Perkins for dramatic purposes which, with other factors, took a tremendous psychological toll. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.68.

4816-5844-9349

4.69    As to the allegations in Paragraph 4.69 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Perkins Lawsuit asserted causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud. Defendants are without knowledge or information sufficient to admit or deny whether Perkins continues to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.69.

4.70    Defendants deny the allegations in Paragraph 4.70 of the Complaint.

4.71    As to the allegations in Paragraph 4.71 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Whaley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.71: that Whaley participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Whaley Lawsuit defendants and aired on television. Defendants are without knowledge or information sufficient to admit or deny whether Whaley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.71.

4.72    As to the allegations in Paragraph 4.72 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Whaley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.72: that Whaley appeared in Season 7, Episode 14 of the show, which first aired in 2019 and continues to air. Defendants are without knowledge or information sufficient to admit or deny whether Whaley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.72.

23

4.73    As to the allegations in Paragraph 4.73 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Whaley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.73: Whaley weighed more than 600 pounds and, as part of her participation in the reality show, was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who placed Whaley under an extreme weight-loss diet. Defendants are without knowledge or information sufficient to admit or deny whether Whaley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.73.

4.74    As to the allegations in Paragraph 4.74 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Whaley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.74: that the Whaley Lawsuit defendants promised to pay all medical bills associated with Dr. Nowzaradan's care and surgery but failed to do so, forcing Whaley to pay and to be subjected to bill collection efforts. Defendants are without knowledge or information sufficient to admit or deny whether Whaley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.74.

4.75    As to the allegations in Paragraph 4.75 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Whaley Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.75: that instead of providing appropriate mental health assistance, that the Whaley Lawsuit defendants manipulated Whaley for dramatic purposes which, with other factors, took a tremendous psychological toll. Defendants are without knowledge or information sufficient to admit or deny whether Whaley continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.75.

4816-5844-9349

4.76    As to the allegations in Paragraph 4.76 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Whaley Lawsuit asserted causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud. Defendants are without knowledge or information sufficient to admit or deny whether Whaley continues to make bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.76.

4.77    Defendants deny the allegations in Paragraph 4.77 of the Complaint.

4.78    As to the allegations in Paragraph 4.78 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.78: that Kirgan participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Kirgan Lawsuit defendants and aired on television. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.78.

4.79    As to the allegations in Paragraph 4.79 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.79: that Kirgan appeared in Season 6, Episode 3 of the show, which first aired in 2018 and continues to air. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.79.

4.80     As to the allegations in Paragraph 4.80 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.80: that Kirgan was placed under the care of Houston-based physician Dr. Younan Nowzaradan, who performed gastric-sleeve surgery on her in December 2017. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.80.

4.81     As to the allegations in Paragraph 4.81 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.81: that the Kirgan Lawsuit defendants manipulated Kirgan to do things she didn't want to do, such as eat a "cheat meal" to be used as a "flashback scene," but the meal would be going against her restricted diet. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.81.

4.82     As to the allegations in Paragraph 4.82 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.82: that the Kirgan Lawsuit defendants promised to pay all medical bills arising out of Kirgan's gastric sleeve surgery in exchange for filming but failed to do so, subjecting her to bill collection efforts for thousands of dollars. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.82.

4.83     As to the allegations in Paragraph 4.83 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.83: that Kirgan reached out to the producers about her declining mental health, depression, and anxiety but no therapy or counseling was offered, aside from one scripted session with a therapist. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.83.

4.84     As to the allegations in Paragraph 4.84 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.84: that the effects of the Kirgan Lawsuit defendants' manipulation of Kirgan for dramatic purposes and their demands on Kirgan, along with other factors, took a tremendous psychological toll on her. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.84.

4.85     As to the allegations in Paragraph 4.85 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Kirgan Lawsuit asserted causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud. Defendants are without knowledge or information sufficient to admit or deny whether Kirgan continues to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.85.

4.86     Defendants deny the allegations in Paragraph 4.86 of the Complaint.

4816-5844-9349

4.87     As to the allegations in Paragraph 4.87 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Ventress Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.87: that Ventress participated in a reality show titled "My 600-lb Life" that was produced, filmed, and directed by the Ventress Lawsuit defendants and aired on television. Defendants are without knowledge or information sufficient to admit or deny whether Ventress continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.87.

4.88     As to the allegations in Paragraph 4.88 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Ventress Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.88: that Ventress appeared in Season 7, Episode 10 of the show, which first aired in 2019 and continues to air. Defendants are without knowledge or information sufficient to admit or deny whether Ventress continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.88.

4.89     As to the allegations in Paragraph 4.89 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Ventress Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.89: that the Ventress Lawsuit defendants promised to pay all charges associated with Ventress' medical care and treatment with Dr. Nowzaradan, including any surgeries. Defendants are without knowledge or information sufficient to admit or deny whether Ventress continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.89.

4816-5844-9349

4.90     As to the allegations in Paragraph 4.90 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Ventress Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.90: that the Ventress Lawsuit defendants promised to pay for mental health treatment, which Dr. Nowzaradan recommended for Ventress, but the producers provided only one therapy session, which was only done so it could be filmed and be part of the show. Defendants are without knowledge or information sufficient to admit or deny whether Ventress continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.90.

4.91     As to the allegations in Paragraph 4.91 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Ventress Lawsuit asserted, among other allegations, as follows and as alleged in Paragraph 4.91: that the effects of the Ventress Lawsuit defendants' manipulation of Ventress for dramatic purposes and their demands on Ventress, along with other factors, took a tremendous psychological toll on Ventress. Defendants are without knowledge or information sufficient to admit or deny whether Ventress continues to make that assertion. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.91.

4.92     As to the allegations in Paragraph 4.92 of the Complaint, the petition(s) in the underlying litigation speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. To the extent a response is required, Defendants admit that the original petition in the Ventress Lawsuit asserted causes of action for negligence and gross negligence, intentional infliction of emotional distress, promissory estoppel, and fraud. Defendants are without knowledge or information sufficient to admit or deny whether Ventress continues to bring those causes of action. Defendants otherwise deny the remaining allegations set forth in Paragraph 4.92.

4.93    Defendants deny the allegations in Paragraph 4.93 of the Complaint.

5.1    Defendants admit the allegations in Paragraph 5.1 of the Complaint.

5.2    As to the allegations in Paragraph 5.2, Defendants admit that Megalomedia, Inc. is a named insured on all of the identified primary policies for all of the identified policy periods. Megalomedia is without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 5.2. Further, the policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

5.3    As to the allegations in Paragraph 5.3, Defendants admit that named insured schedule for the second and third policy periods of the identified primary policies includes Megalomedia, Inc. and Mansfield Films. Defendants admit that named insured schedule for the second and third policy periods also includes and other entities that were not parties to the underlying lawsuits at the time the Complaint was filed.  Defendants otherwise deny the remaining allegations set forth in Paragraph 5.3. Further, the policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

5.4    As to the allegations in Paragraph 5.4, Defendants admit that the replicated text appears within the primary policies, but deny the Insurer's allegations that its selected replications constitute the "pertinent" part, definitions, and endorsements. The policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. Defendants admit that the Commercial General Liability Coverage Part provides coverage for, among other things, bodily injury and property damage. Defendants admit that the primary policies contain, among other endorsements, a General Liability Deluxe Endorsement. Defendants admit that the General Liability Deluxe Endorsement amends the definition of bodily injury. Defendants otherwise deny the remaining allegations set forth in Paragraph 5.4.

5.5    Defendants deny the allegations in Paragraph 5.5 of the Complaint.

6.1    Defendants incorporate by reference Paragraphs 1.1 through 5.5 of this Answer.

6.2    As to the allegations in Paragraph 6.2, Defendants admit that, at the time the Complaint was filed, the petition then on file in the consolidated underlying lawsuit was brought

30

against Megalomedia, Inc., Megalomedia Studios, LLC, Megalomedia, LLC, Mansfield Films, LLC, and DBA Holdings, LLC, but deny that each or all of the original petitions named those five entities.  Defendants deny that the underlying lawsuit is currently brought against those five entities. Defendants otherwise deny the remaining allegations set forth in Paragraph 6.2.

6.3    Defendants admit that Megalomedia, Inc. is a named insured on each of the three primary policies, and that Mansfield Films is also a named insured for the second and third primary policies, as alleged in Paragraph 6.3 of the Complaint. Megalomedia is without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 6.3. Further, the policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.4    Defendants admit that the primary policies provide coverage for "bodily injury" or "property damage" caused by an "occurrence" as alleged in Paragraph 6.4 of the Complaint, but deny that such coverage is the only coverage provided. Defendants otherwise deny the remaining allegations in Paragraph 6.4. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.5    Defendants admit that the original petitions in the Bolton, Krasley, Radanovic, Covey, Lewis, Perkins, Whaley, Kirgan, and Ventress Lawsuits asserted intentional infliction of emotional distress, and the Bonner Lawsuit asserted that Megalomedia created dramatic tension and manipulated Bonner and his family, which resulted in harm to his mental health, as alleged in Paragraph 6.5 of the Complaint. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether those underlying plaintiffs continue to make those assertions. Defendants otherwise deny the remaining allegations in Paragraph 6.5.  Further, the petitions and policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.6     Defendants deny the allegations in Paragraph 6.6. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.7     Defendants deny the allegations in Paragraph 6.7. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.8     Defendants deny the allegations in Paragraph 6.8. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.9     Defendants admit that the original petitions included promissory estoppel claims alleged by Bolton, Radanovic, Fallaw, Lewis, Perkins, Whaley, Kirgan, and Ventress, as alleged in Paragraph 6.9 of the Complaint. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether those underlying plaintiffs continue to make those assertions. Defendants otherwise deny the remaining allegations in Paragraph 6.9. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

6.10     Defendants admit that the original petitions included fraud claims alleged by Lewis, Perkins, Whaley, Kirgan, and Ventress, as alleged in Paragraph 6.10 of the Complaint. Due to the evolving nature of the underlying litigation and pleadings, Defendants are without knowledge or information sufficient to admit or deny whether those underlying plaintiffs continue to make those assertions. Defendants otherwise deny the remaining allegations in Paragraph 6.10. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

7.1     Defendants admit the allegations in Paragraph 7.1 of the Complaint.

7.2     The policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves. Defendants admit that the umbrella poli-

cies were issued for the same policy periods as the primary policies as alleged in Paragraph 7.2 of the Complaint. Defendants otherwise deny the remaining allegations in Paragraph 7.2.

7.3    Defendants deny the allegations in Paragraph 7.3 of the Complaint. The policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

7.4    As to the allegations in Paragraph 7.4, Defendants admit that the replicated text appears within the umbrella policies, but deny that the selection replicated constitutes the entirety of the umbrella policies or the entirety of the General Liability Follow Form Endorsement. The policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

8.1    Defendants incorporate by reference Paragraphs 1.1 through 7.4 of this Answer.

8.2    Defendants deny the allegations in Paragraph 8.2 of the Complaint. The policies speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

9.1    Defendants admit that Philadelphia issued policies to Megalomedia, as alleged in Paragraph 9.1 of the Complaint. Defendants otherwise deny the remaining allegations in Paragraph 9.1. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

10.1    Defendants admit that the Insurer seeks to reserve the right to amend as alleged in Paragraph 10.1 of the Complaint, but deny that the Insurer's reservation has merit.  Defendants otherwise deny the remaining allegations in Paragraph 10.1.

11.1    Defendants admit that the Insurer seeks a declaration as alleged in Paragraph 11.1 of the Complaint, but deny that the Insurer is entitled to the declaration it seeks. Defendants otherwise deny the remaining allegations in Paragraph 11.1. Further, the policies and petitions speak for themselves, and Defendants object to the Insurer's attempts to characterize documents which speak for themselves.

## II. AFFIRMATIVE DEFENSES

12.     The Insurer has waived its right to deny or dispute its duty to defend Defendants as to the underlying claims.

13.     The Insurer is estopped from denying or disputing its duty to defend Defendants as to the underlying claims.

14.     The Insurer's claims for declaratory judgment are barred by laches.

15.     The Insurer's claims are barred by the doctrine of unclean hands.

16.     The Insurer's claims are barred in whole or in part by the doctrine of unjust enrichment, as Insurer's retention of the premiums paid by Megalomedia for insurance coverage would be unjust if the Insurer refuses to acknowledge its obligations to Defendants under the Policies.

## III. DEFENDANTS' COUNTERCLAIMS

17.     Having responded to each and every paragraph of the Insurer's Complaint and asserted its affirmative defenses, and without waiving those defenses, Defendants counterclaim against the Insurer demanding coverage under the Policies and damages against the Insurer for its wrongful denial of coverage as follows. As described below in more detail, Defendants seek the following: a declaration that the Policies cover the Underlying Litigation, recovery of Defendants' costs of defense, indemnity of the settlements and claims Defendants paid, consequential damages, attorneys' fees, and pre- and post-judgment interest.

### A.     Parties, Jurisdiction and Venue

18.     The Insurer, Philadelphia, is subject to the jurisdiction and venue of this Court by virtue of having brought this action.

19.     Megalomedia, Inc. is a Texas corporation doing business in the state of Texas with its principal place of business in Travis County, Texas.

20.     Mansfield Films, LLC is a Texas limited liability company doing business in the state of Texas with its principal place of business in Travis County, Texas.

21.     Megalomedia Studios, LLC is a Texas limited liability company doing business in the state of Texas with its principal place of business in Travis County, Texas.

22.     DBA Holdings, LLC is a Texas limited liability company doing business in the state of Texas with its principal place of business in Travis County, Texas.

## B.     General Allegations

*Relationship Between the Parties*

23.     Philadelphia is an insurance company that provides commercial property insurance, commercial general liability insurance, commercial inland marine insurance, commercial automobile insurance, and commercial umbrella liability insurance to Megalomedia.

24.     Megalomedia paid premiums for its insurance policies with Philadelphia.

25.     In 2019, Megalomedia's premiums to Philadelphia totaled over $70,000 for coverage under the Primary Policy, plus additional premiums for coverage under the Umbrella Policy.

*Insurance Policies at Issue*

26.     Megalomedia obtained three successive primary insurance policies from Philadelphia: (i) PHPK-1759596, effective December 1, 2017 to December 1, 2018; (ii) PHPK-191368, effective December 1, 2018 to December 1, 2019; and (iii) PHPK-2069535, effective December 1, 2019 to December 1, 2020 (collectively, the "Primary Policies").

27.     In addition, Megalomedia obtained three successive excess or umbrella liability insurance policies from Philadelphia: (i) PHUB611489, effective December 1, 2017 to December 1, 2018; (ii) PHUB656486, effective December 1, 2018 to December 1, 2019; and (iii) PHUB702969, effective December 1, 2019 to December 1, 2020 (collectively, the "Umbrella Policies," and collectively with the Primary Policies, the "Policies").

28.     Megalomedia is a named insured on all of the Policies.

29.     There are other named insured on the Policies. Mansfield Films is a named insured on the second and third Policies.

30.     Megalomedia has been a long-standing policy holder of Philadelphia's, first procuring insurance from Philadelphia in 2010.

31.     Megalomedia has always paid its premiums under the Policies to Philadelphia on a timely basis.

*Underlying Injury Lawsuits Against Megalomedia*

32.     On February 10, 2020, David Bolton, an individual who had been filmed for the reality show My 600-Lb Life, brought a lawsuit against Defendants.  Mr. Bolton alleged causes of action for negligence, intentional infliction of emotional distress, and promissory estoppel.

33.     Mr. Bolton alleged that he had undergone gastric bypass surgery, that he underwent significant weight loss, that his "new body required a significant amount of adjustment," and that these changes caused him "extreme frustration and depression."  Mr. Bolton alleged that Megalomedia and the other named defendants then "aggravated the situation," and that the "effects of Defendants' manipulation of Plaintiff and his family for dramatic purposes, along with the ramifications of the extreme weight loss and Defendants' demands on Plaintiff, took a tremendous psychological toll on Plaintiff."

34.     Megalomedia promptly notified Philadelphia of the lawsuit and requested that Philadelphia defend and indemnify Megalomedia and Defendants for the claims of Mr. Bolton.

35.     From January to April of 2020, several other former participants who were represented by the same law firm as Mr. Bolton, brought similar lawsuits against Defendants.  The plaintiffs included the following individuals: Karen Sue Bonner, James Bonner, Sr., and Tera Ann Shumaker, as personal representative of the Estate of James "L.B." Bonner, Jr.; Jeanne Covey and Barbara J. Fallaw; Alicia Kirgan; Gina Krasley; Nicole Lewis; Dorothy Perkins; Maja Radanovic; Matthew Ventress a/k/a Destinee Lashaee; and Annjeanette Whaley (collectively with Mr. Bolton, the "Underlying Plaintiffs").

36

36.     All of the claims and lawsuits brought by the Underlying Plaintiffs (individually, collectively, and as consolidated, the "Underlying Claims" in the "Underlying Litigation") were ultimately consolidated into the case styled *Karen Sue Bonner, James Bonner, Sr., Tera Ann Shumaker, as Personal Representative of the Estate of James "L.B." Bonner, Jr. v. Megalomedia Inc., Megalomedia LLC, Mansfield Films, LLC, and DBA Holdings, LLC*, Cause No. 2020-03939, pending in the 55th Judicial District Court in Harris County, Texas.

37.     As they were filed, Megalomedia promptly notified Philadelphia of each of the lawsuits and requested that Philadelphia defend and indemnify Megalomedia and Defendants for the claims.

38.     Philadelphia denied coverage as to all of the claims in the Underlying Litigation.

39.     Defendants obtained their own attorneys to represent their interests in the Underlying Litigation brought by the Underlying Plaintiffs.

## C.     First Cause of Action - Declaratory Judgment

40.     Defendants incorporate the allegations contained in paragraphs 17 to 39 as if fully set forth herein.

41.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, the Federal Declaratory Judgments Act, and Chapter 37 of the Texas Civil Practice and Remedies Code, the Texas Uniform Declaratory Judgments Act.

42.     An actual controversy of a judicial nature exists between Defendants and the Insurer, Philadelphia, involving their rights and liabilities under the Primary Policies and Umbrella Policies relative to the obligation to defend and indemnify Defendants from the claims made against Defendants in the Underlying Litigation.  A resolution of this controversy is dependent upon an analysis of the Primary Policies and Umbrella Policies.

43.     Megalomedia, as a named insured under the Policies, has otherwise complied with all of the conditions precedent to coverage under the Primary Policies and Umbrella Policies that are the subject of this action.  Nevertheless, the Insurer failed to provide for Megalome-

dia's and the Defendants' defense against the claims asserted against them in the Underlying Litigation. As a result, Defendants have been damaged in an amount to be determined at trial, together with attorneys' fees incurred in this action.

44. Defendants request that this Court declare that Defendants' coverage under the Policies covers claims asserted in the Underlying Litigation and therefore Insurer has a duty to defend and indemnify Defendants against the claims in the Underlying Litigation.

45. Defendants further seek their reasonable and necessary attorneys' fees incurred in this matter pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

**D.     Second Cause of Action - Breach of Contract**

46. Defendants incorporate the allegations contained in paragraphs 17 to 45 as if fully set forth herein.

47. Megalomedia has an insurance contract with the Insurer, Philadelphia.

48. In exchange for Megalomedia's payment of premiums, Philadelphia agreed to provide commercial general liability coverage and umbrella excess coverage to Megalomedia, and other named insureds, among other coverages.

49. Megalomedia, as a named insured under the Policies, has otherwise complied with all of the conditions precedent to coverage under the Primary Policies and Umbrella Policies that are the subject of this action.

50. Philadelphia breached its contract in (1) failing to defend Megalomedia and the other Defendants in the Underlying Litigation; and (2) failing to pay claims arising out of, and settlements made in the resolution of, the Underlying Litigation.

51. Due to Philadelphia's breach of its contractual obligations to Defendants, Defendants suffered damages including but not limited to (1) the reasonable and necessary expenses Defendants have incurred, and now continue to incur, in defending against the Underlying Litigation; (2) any judgment against Defendants in favor of the Underlying Plaintiffs;  (3) any settlement amount paid by Defendants in the resolution of the Underlying Litigation, in whole or in

part; and (4) incidental and consequential damages which occurred due to Philadelphia's failure to perform its obligations under the Policies.

52.      Defendants further seek their reasonable and necessary attorneys' fees incurred in this matter.

### E.      Third Cause of Action - Breach of the Duty of Good Faith and Fair Dealing

53.      Defendants incorporate the allegations contained in paragraphs 17 to 52 as if fully set forth herein.

54.      Megalomedia and Mansfield Films are named insureds under the Policies issued by Philadelphia. As a matter of law, Philadelphia owed, among other duties, the duty of good faith and fair dealing to Megalomedia and Mansfield Films.

55.      Philadelphia's conduct, as described above, constitutes a breach of the Insurer's duty of good faith and fair dealing.

56.      Philadelphia knew that coverage of the Underlying Claims was reasonably clear or, at minimum, should have known that coverage reasonably clear.  But Philadelphia denied coverage and payment.

57.      For example, and without limitation, Philadelphia's interpretation and application of the term "occurrence" in the Policies is precluded by Texas Supreme Court and Fifth Circuit law, and cannot form the basis of a bona fide coverage dispute. Philadelphia's denial of coverage and payment based on this clearly erroneous interpretation is pretext, unreasonable, and constitutes breach of the Insurer's duty of good faith and fair dealing to Megalomedia and Mansfield Films.

58.      As a direct and proximate result of Philadelphia's numerous breaches of its duties to act in good faith towards its insureds, Defendants suffered damages, including but not limited to compensatory damages including but not limited to (1) the reasonable and necessary expenses Defendants have incurred, and now continue to incur, in defending against the underlying lawsuit; (2) any judgment against Defendants in favor of the Underlying Plaintiffs; (3) any settle-

4816-5844-9349

ment amount paid by Defendants in the resolution of the Underlying Litigation, in whole or in part; and (4) incidental and consequential damages which occurred due to the Insurer's failure to perform its obligations under the Policies.

**E.      Fourth Cause of Action – Violation of Texas Insurance Code, Chapter 542**

59.      Defendants incorporate the allegations contained in paragraphs 17 to 58 as if fully set forth herein.

60.      Megalomedia and Mansfield Films are named insureds under the Policies issued by Philadelphia.   Megalomedia and Mansfield Films have a claim under the Policies, under which Philadelphia must defend and indemnify Defendants against the Underlying Litigation.

61.      Megalomedia promptly notified Philadelphia of the Underlying Litigation and requested that Philadelphia defend and indemnify Defendants against the claims in the Underlying Litigation.

62.      Philadelphia wrongfully rejected Megalomedia's valid claim, and refused to either provide a defense for Defendants or to pay Defendants' defense costs. Philadelphia did not tender any partial payment on the claim.

63.      Philadelphia's conduct, as described above, constitutes a breach of the Insurer's duty of to promptly pay Defendants' defense costs.

64.      As a direct and proximate result of Philadelphia's numerous breaches of its duties to act in good faith towards its insured, Defendants suffered damages, including but not limited to compensatory damages including but not limited to (1) the reasonable and necessary expenses Defendants have incurred, and now continue to incur, in defending against the underlying lawsuit; (2) any judgment against Defendants in favor of the Underlying Plaintiffs; (3) any settlement amount paid by Defendants in the resolution of the Underlying Litigation, in whole or in part; and (4) incidental and consequential damages which occurred due to the Insurer's failure to perform its obligations under the Policies.

4816-5844-9349

E.     **Fifth Cause of Action – Deceptive Insurance Practices in Violation of Texas Insurance Code, Chapter 541**

65.     Defendants incorporate the allegations contained in paragraphs 17 to 64 as if fully set forth herein.

66.     Megalomedia and Philadelphia are both "persons," as that term is defined in Chapter 541 of the Texas Insurance Code (Deceptive Insurance Practices).

67.     Philadelphia's above-described conduct constitutes numerous violations of Texas Insurance Code, Chapter 541, subchapter B, including but not limited to, the following violations: (1) making material misrepresentations of the law, Tex. Ins. Code § 541.061(4); (2) misrepresenting to Megalomedia material facts and provisions of the Policies relating to coverage of the Underlying Litigation, *id.* § 541.060(a)(1); (3) making statements misrepresenting the terms of the Policies; *id.* § 541.051(1)(A); (4) not attempting in good faith to bring about a prompt, fair, and equitable settlement of Megalomedia's claim under the Policies once Philadelphia's liability was reasonably clear, *id.* § 541.060(a)(2)(A); (5) not giving Megalomedia a reasonable explanation for Philadelphia's denial of coverage, *id.* § 541.060(a)(3); and (6) denying coverage and refusing to pay without conducting a reasonable investigation, *id.* § 541.060(a)(7). Philadelphia acted knowingly in when it engaged in these deceptive acts and misrepresentations.

68.     As a direct and proximate result of Philadelphia's deceptive acts and misrepresentations, Defendants suffered damages, including but not limited to compensatory damages including but not limited to (1) the reasonable and necessary expenses Defendants have incurred, and now continue to incur, in defending against the underlying lawsuit; (2) any judgment against Defendants in favor of the Underlying Plaintiffs; (3) any settlement amount paid by Defendants in the resolution of the Underlying Litigation, in whole or in part; and (4) incidental and consequential damages which occurred due to the Insurer's failure to perform its obligations under the Policies.

F.      **Six Cause of Action – Attorneys' Fees**

69.      Defendants incorporate the allegations contained in paragraphs 17 to 68 as if fully set forth herein.

70.      Due to the actions of Philadelphia, Defendants have been forced to retain the services of the law firm of Scott, Douglass & McConnico, L.L.P.  Defendants have agreed to pay a reasonable fee for the attorneys' services necessary to be rendered in this action. Pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgment), Chapter 38 of the Texas Civil Practice and Remedies Code (Breach of Contract), Chapter 542 of the Texas Insurance Code (Unfair Claim Settlement Practices), and Chapter 541 of the Texas Insurance Code (Deceptive Insurance Practices). Defendants are entitled to an award of their reasonable attorneys' fees in an amount to be established at trial.

## V.      PRAYER

WHEREFORE, Defendants request that the Insurer's request for relief be denied, Defendants' request for relief be granted, and that a judgment be entered against the Insurer and in favor of Defendants such that:

1.      the Insurer take nothing by reason of its complaint;

2.      a declaration by this Court that the Insurer's policies cover the claims asserted by Plaintiffs in the Underlying Lawsuit against Defendants and that the Insurer owned to Defendants a duty to defend and indemnify against those claims;

3.      judgment for Defendants against the Insurer for all damages Defendants have suffered as a result of the Insurer's breach of the insurance contracts, its duties to defend and indemnify Defendants, its duty of good faith and fair dealing, and its duty to promptly pay, and as a result of the Insurer's deceptive insurance practices;

4.      judgment that Defendants are entitled to recover their costs and expenses, including attorneys' fees incurred in this action;

5.      judgment awarding Defendants their costs and pre-judgment and post-judgment interest in the maximum as allowed by law;

6.      judgment that Defendants are entitled to recover statutory and additional damages against Philadelphia in the maximum as allowed by law; and

7.      such other and further relief as this Court deems just and proper.

Dated: August 11, 2020

                Respectfully submitted,

                SCOTT DOUGLASS & MCCONNICO LLP
                303 Colorado Street, Suite 2400
                Austin, Texas 78701
                (512) 495-6300 Telephone
                (512) 495-6399 Facsimile

                By   _/S/ Stephen E. McConnico_____

                    Stephen E. McConnico–Attorney-in-Charge
                    Texas Bar No. 13450300
                    Southern District Bar No. 2879
                    smcconnico@scottdoug.com
                    Santosh Aravind
                    Texas Bar No. 24095052
                    Southern District Bar No. 2887372
                    saravind@scottdoug.com
                    Stephanie Kover
                    Texas Bar No. 24102042
                    Southern District Bar No. 3101605
                    skover@scottdoug.com

                    *Attorneys for Defendants Megalomedia, Inc., Megalomedia Studios, LLC, Mansfield Films, LLC, and DBA Holdings, LLC*

43

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was electronically filed with the clerk of the court using the CM/ECF system and that it was served on Plaintiff on the 11th day of August, 2020.

Stephen A. Melendi
Matthew Rigney
TOLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Ste. 250
Dallas, Texas  75204


*/s/ Santosh Aravind*
Santosh Aravind

44