United States District Court
Southern District of Texas
**ENTERED**
June 01, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **PHILADELPHIA INDEMNITY** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:20-CV-1644** |
| | § | |
| **MEGALOMEDIA, INC., et al.** | § | |
| | § | |
| **Defendants.** | § | |

**O R D E R**

Pending before the Court is Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment. **(Instrument No. 21).**

**I.**

**A.**

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") brings this declaratory judgment action against Defendants Megalomedia, Inc., Megalomedia Studios, LLC, Mansfield Films, LLC, and DBA Holdings, LLC (collectively, "Megalomedia"). (Instrument No. 1).

This declaratory judgment action arises out of a series of tort lawsuits filed in Harris County District Court. (Instrument No. 24 at 5). Since their filings, the lawsuits have been consolidated into one lawsuit (the "Bonner Lawsuit"). (Instruments No. 21 at 8; No. 21-18; No. 24-3 at 2-3). Philadelphia files this suit seeking a declaratory judgment that it has no duty to defend or indemnify Megalomedia against the claims asserted in the Bonner Lawsuit. (Instrument No. 21 at 9).

**1.**

Megalomedia produces television shows and is based in Austin, Texas. (Instrument No. 24 at 6). In 2012, Megalomedia began producing *My 600-lb Life*, a reality television show that follows the lives of morbidly obese participants as they work towards attaining a healthy weight. (Instruments No. 24 at 6; No. 21-18 at 6). In 2020, twelve current and former participants or family members of participants filed ten lawsuits in Harris County, alleging they had suffered injuries as a result of their participation on *My 600-lb Life*. (Instruments No. 21-1—No. 21-10).

Plaintiffs in the Bonner Lawsuit sued Megalomedia for manipulating the plaintiffs and their families to fabricate story lines and drama in an attempt to boost ratings and viewership. *See, e.g.*, (Instrument No. 21-1 at 2-3). On May 20, 2020, the ten lawsuits were consolidated to one (the "Bonner Lawsuit") and the plaintiffs filed their amended complaint, alleging negligence, gross negligence, intentional infliction of emotional distress, promissory estoppel, fraud, and wrongful death and survival damages. (Instrument No. 21-18).

**2.**

In 2010, Philadelphia issued Megalomedia a commercial general liability ("CGL") insurance policy, which is considered the "primary policy." (Instruments No. 24 at 6; No. 24-2 at 2). Philadelphia also issued "umbrella policies" to Megalomedia to provide coverage in excess of the primary policies. (Instrument No. 21 at 20). The primary policies and umbrella policies (collectively, the "Policies") were renewed for eight years, providing coverage from 2010 to 2020. (Instrument No. 24-2 at 2). Each year, Megalomedia completed an application to renew the Policies and Philadelphia approved the renewal. *Id.*

The Bonner Lawsuit alleges injuries that span policy periods 2017-2020. (Instrument No. 21 at 9).

The Policies state, in relevant part,

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .
   b. This insurance applies to "bodily injury and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period; and
      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

                                          . . .

2. **Exclusions**
   This insurance does not apply to:
   a. **Expected Or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property . . . .

(Instrument No. 21-11 at 112-13). The Policies include a General Liability Deluxe Endorsement that modifies the definition of "bodily injury" to read:

3

"Bodily Injury"

    a.  Means bodily injury, sickness or disease sustained by a person, and includes mental anguish resulting from any of these; and

    b.  Except for mental anguish, includes death resulting from the foregoing (Item a. above) at any time.

(Instrument No. 21-11 at 149). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Instrument No. 21-11 at 125). The Policies also include an endorsement that provides:

### EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**
Excludes the production of, filming or distribution of pornographic materials. Excludes any/all reality shows. Excludes rental/loan of insureds equipment or equipment leased by the insured to 3rd party[.]

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABIILTY (Section I – Coverages):
This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location."

4

(hereinafter, the "Designated Ongoing Operations Exclusion") (Instrument No. 21-11 at 139).

The first iteration of the Policies, entered into in 2010, did not include the Designated Ongoing Operations Exclusion. (Instruments No. 24-2 at 2-3; No. 24-4). At some point thereafter, Megalomedia received an amendment notice, noting the inclusion of the following language:

In consideration of the premium reflected, the policy is amended as indicated below:

AMENDED:
CG2153 Designated Ongoing Operations to include:
Excludes any/all reality shows

Per attached

(Instrument No. 24-7 at 3). The change went into effect on June 3, 2011. (Instrument No. 24-7 at 2).

**B.**

On May 11, 2020, Philadelphia filed its Complaint against Megalomedia. (Instrument No. 1). On August 11, 2020, Megalomedia filed its Answer. (Instrument No. 16).

On November 20, 2020, Philadelphia filed its Motion for Summary Judgment. (Instrument No. 21). On December 21, 2020, Megalomedia filed its Response. (Instrument No. 24). On January 8, 2021, Philadelphia filed its Reply. (Instrument No. 27).

**II.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 312, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-25). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am.'s Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

## III.

Philadelphia moves for summary judgment, arguing that it does not have a duty to defend or duty to indemnify Megalomedia for any claims brought by plaintiffs in the Bonner Lawsuit or similar claims that might be brought against Megalomedia. (Instrument No. 21 at 9).

As a preliminary matter, Philadelphia argues that only Megalomedia, Inc. and Mansfield Films, LLC are insured defendants under the Policies. (Instruments No. 21 at 9; No. 21-11 at 11; No. 21-12 at 11; No. 21-13 at 11). Megalomedia Inc. is the only named insured on the three primary policies and Mansfield Films is added as an additional insured on two of the primary policies. (Instruments No. 21 at 9; No. 21-12 at 18; No. 12-13 at 18). Megalomedia does not address this argument. (Instrument No. 24). Thus, pursuant to Federal Rule of Civil Procedure 56(e), the Court considers this fact undisputed.

### A.

Philadelphia contends that the Policies exclude coverage for claims arising out of reality television shows. (Instrument No. 21 at 12).

Under Texas law, an insurer's duty to defend an insured is determined by examining the allegations in the petition filed against the insured and the relevant insurance policy. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). This standard is referred to as the "eight corners" rule. *Id.* at 141. When applying the eight corners rule, courts are to give the allegations in the petition a liberal interpretation in favor of the insured. *Id.* Courts are to consider the allegations in light of the policy provisions without reference to their validity and without reference to what the parties know or believe to be the true facts. *See Argonaut S.W. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). The Court cannot read facts into the pleadings, look outside of the pleadings, or "imagine factual scenarios which might trigger coverage." *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 142.

To establish a duty to defend, the pleadings must allege a claim that is potentially covered by the policy. *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). "[W]hen 'the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011) (quoting Farmers *Tex. Cty. Mut. Ins. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). "If the petition only alleges facts excluded by the policy, the insurer is not required to defend." *Fidelity & Guar. Ins.*, 633 S.W.2d at 788. Under Texas law, the insured party bears the initial burden of showing that a claim is potentially within the scope of coverage. *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F. Supp. 2d 693, 697 (S.D. Tex. 2002) (Rosenthal, J.). If the insurer relies on policy exclusions in denying

8

coverage, the burden is on the insurer to prove that one or more of the exclusions apply. *Id*. Once the insurer has proven that an exclusion applies, the burden shifts back to the insured, who must show that the claim falls within an exception to the exclusion. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).

The interpretation of an insurance policy is a question of law for this Court. *See New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). Under Texas law, a court shall apply the same rules of interpretation to insurance contracts as to contracts in general. *See Id*. The Court's primary concern in interpreting a contract is to "ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). This effect can be achieved by reading all parts of a contract together. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). Courts should be particularly wary of isolating one clause from its surroundings or considering a clause, phrase, sentence, or section of a contract apart from other provisions. *Id*.

When terms are defined in an insurance contract, those definitions control. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). When terms are not defined in an insurance contract, they are to be given their plain, ordinary, and generally accepted meaning, unless the contract indicates that the terms were used in a technical or different sense. *See Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976).

If the contract is worded so that it can be given only one reasonable construction, it is enforced as written. *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). But if a contract is ambiguous, uncertainty must be resolved by adopting the construction that most favors the insured party. *Hudson*, 811 S.W.2d at 555. When a contract is found to be ambiguous, extrinsic evidence can be considered. *See Nat'l Union Fire Ins. Co. of*

9

*Pittsburgh, PA v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995); *Star-Tex Res., L.L.C. v. Granite State Ins.*, 553 F. App'x 366, 371-72 (5th Cir. 2014). Here, the Court finds that the Policies are unambiguous and, consequently, will not consider extrinsic evidence.

Philadelphia specifically contends that the Policies exclude coverage of the claims asserted in the Bonner Lawsuit because of the Designated Ongoing Operations Exclusion. (Instrument No. 21 at 14-15). Megalomedia asserts that this exclusion provision actually allows coverage for liability arising from reality television shows. (Instrument No. 24 at 11).

The Designated Ongoing Operations Exclusion reads, in part:

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**
Excludes the production of, filming or distribution of pornographic materials. Excludes any/all reality shows. Excludes rental/loan of insureds equipment or equipment leased by the insured to 3rd party.

(Instrument No. 21-13 at 146). The provision further states that the "insurance does not apply to 'bodily injury' or 'property damage' arising out of the ongoing operations described in the Schedule of this endorsement . . . ." *Id.*

Megalomedia argues that the Policies do not list any designated ongoing operations and, instead, enumerates exceptions to the Designated Ongoing Operations Exclusion. (Instrument No. 24 at 11). Consequently, Megalomedia contends that this language exempts reality television shows from being categorized as a "designated ongoing operations." (Instrument No. 24 at 11). This interpretation contradicts the plain, ordinary, and generally accepted meaning of the Policies' terms. The Policies explicitly state that any liability arising out of the ongoing operations described in the Schedule is excluded from the Policies' coverage. "Any/all reality shows" is described in the Schedule. Therefore, it is excluded from the Policies' coverage.

Megalomedia's interpretation also conflicts with the language of other provisions in the Policies. If Philadelphia intended for the Schedule to list exceptions to the Designated Ongoing Operations Exclusion, it would have explicitly stated so like it did in other provisions of the Policies. For example, the Policies' "production stunts, weapons, pyrotechnics and animal exposure" exclusion states,

**SCHEDULE**

**Description of Covered Stunts, Weapons, Pyrotechnics and/or Animal Exposure:**

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" (if applicable), direct or indirect loss or damage arising out of, resulting from, or otherwise relating in whole or in part to "stunts," "pyrotechnics" or "animal exposure" unless specifically declared by you, accepted by us and included in the endorsement SCHEDULE above.

(Instrument No. 21-13 at 159). The exclusion clearly indicates that all stunts, weapons, pyrotechnics, and animal exposure are excluded, unless an exception is listed in the Schedule. *Id.* That is not the structure of the Designated Ongoing Operations Exclusion. Based on a reading of all parts of the Policies together, it is evident that Philadelphia did not intend to provide exceptions to the Designated Ongoing Operations Exclusion. Thus, the Court finds that Philadelphia has established that the Designated Ongoing Operations Exclusion excludes reality television shows and Megalomedia has not established that its claim falls under an exception to the Exclusion.

**B.**

Megalomedia argues that, if Philadelphia establishes the Designated Ongoing Operations Exclusion, Philadelphia either is estopped from asserting its right or waived its right to enforce the policy exclusion.

11

**1.**

The Court first turns to the estoppel issue. Megalomedia argues that Philadelphia is estopped from disclaiming coverage based on the Designated Ongoing Operations Exclusion because Philadelphia concealed the fact that reality television was excluded from the Policies' coverage and Megalomedia had no knowledge of the exclusion. (Instrument No. 24 at 17).

Estoppel prevents one party from misleading another to the detriment of the misled or to the benefit of the misleading party. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). The doctrine of estoppel requires: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998).

Megalomedia contends that Philadelphia accepted large premiums for several years despite knowing that Megalomedia was a "100% reality-TV business." (Instrument No. 24 at 17). Megalomedia argues that in its Film Production Supplemental Application, Megalomedia disclosed that 100% of Megalomedia's production activity consists of reality television. (Instrument No. 24 at 15). Megalomedia asserts that Philadelphia's interpretation of the Policies—excluding coverage for liability arising from reality television shows—would wipe Megalomedia's coverage entirely. *Id.* However, Megalomedia distorts the evidence. The supplemental applications indicate that 100% of Megalomedia's production activity consists of both reality television shows and documentaries. (Instruments No. 24-5 at 2; No. 24-6 at 2). Consequently, it is plausible that the Policies still cover liability arising from Megalomedia's documentaries.

Furthermore, the record demonstrates that Megalomedia had knowledge of the exclusion and Philadelphia provided express representation that reality television was excluded from coverage. In 2011, Philadelphia notified Megalomedia of a policy change, which stated:

> In consideration of the premium reflected, the policy is amended as indicated below:
>
> AMENDED:
> CG2153 Designated Ongoing Operations to include:
> Excludes any/all reality shows

(Instrument No. 24-7 at 3). This unambiguous language of the amendment makes clear that the same premium now excludes reality television shows from the Policies' coverage. This evidence demonstrates that Megalomedia had full notice of this amendment as early as June 3, 2011, which is when the amendment went into effect. *Id.* at 2. Thus, the Court finds that Philadelphia is not estopped from disclaiming coverage based on the Designated Ongoing Operations Exclusion.

**2.**

Megalomedia also contends that Philadelphia waived its right to enforce any policy exclusions because it provided an unqualified representation of Megalomedia in the Bonner Lawsuit. (Instrument No. 24 at 18).

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co.*, 262 S.W.3d at 778. To establish a waiver, the insured must demonstrate (1) the existence of a right, benefit, or advantage held by a party; (2) the party's actual knowledge of this existence; and (3) the party's intent to relinquish the right or intentional conduct that conflicts with the right. *Id.*

Megalomedia argues that an insurer waives all policy defenses, even noncoverage, when an insurer assumes an insured's defense without declaring a reservation of rights or obtaining a non-waiver agreement. (Instrument No. 24 at 18). However, the case law Megalomedia cites to

in support of this argument was abrogated by *Ulico Casualty Company*. *See* 262 S.W.3d at 787. In *Ulico*, the Supreme Court of Texas explicitly held that an insurer's policy coverage could not be expanded by waiver or estoppel. *Id.* at 787. This includes "noncoverage" of a risk. *Id.* at 782. Thus, the Court finds Philadelphia did not waive its right to enforce the Designated Ongoing Operations Exclusion.

Accordingly, Philadelphia's Motion for Summary Judgment is **GRANTED**.

## V.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Philadelphia's Motion for Summary Judgment is **GRANTED**. **(Instrument No. 21).**

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 28th day of May, 2021, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**