UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | § § § | |
| *Plaintiff*, | § § | |
| V. | § § | Civil Action No. 4:20-cv-01644 |
| MEGALOMEDIA, INC., *et al.* | § § § | |
| *Defendants*. | § § | |

**MEGALOMEDIA'S RESPONSE TO PHILADELPHIA'S 12(b)(6) MOTION
TO DISMISS MEGALOMEDIA'S COUNTERCLAIMS**

**Scott Douglass & McConnico, LLP**
Steve McConnico
smcconnico@scottdoug.com
Texas Bar No. 13450300
S.D. Texas No. 2879
Santosh Aravind
saravind@scottdoug.com
Texas Bar No. 24095052
S.D. Texas No. 2887372
Stephanie Kover
skover@scottdoug.com
Texas Bar No. 24102042
S.D. Texas No. 3101605
303 Colorado Street
Suite 2400
Austin, TX 78701
(512) 495-6300
(512) 495-6399 Fax

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT .................................... 1

II.    NATURE AND STAGE OF THE PROCEEDING ....................................... 2

III.   ISSUES PRESENTED ........................................................ 2

IV.    LEGAL STANDARD ......................................................... 3

V.     ARGUMENT .............................................................. 3

       A.    Philadelphia's limitations argument should be denied because Philadelphia
             ignores the discovery rule and Megalomedia's allegations that toll the
             limitations period. ............................................... 3

             1.    Philadelphia ignores both the discovery rule and the fraud rule................. 4

             2.    Megalomedia alleges sufficient facts that show that any limitation
                   period should be tolled based on the discovery rule. ................................ 6

       B.    Megalomedia's fraudulent inducement claim survives because each
             Philadelphia insurance policy is separate and was formed after the
             misrepresentations.................................................. 9

       C.    Megalomedia's counterclaims sufficiently satisfy Rule 9(b). ........................... 11

             1.    The misrepresentations Philadelphia *admits* are sufficiently specific
                   are, alone, more than sufficient to satisfy Rule 9(b). ............................... 11

             2.    Philadelphia's attempts to dispute other alleged facts and argue the
                   merits of the misrepresentations must fail. ................................. 13

             3.    Megalomedia has alleged additional misrepresentations that are
                   sufficiently specific.................................................. 15

       D.    Megalomedia's Chapter 541 Counterclaims Survive. ........................... 16

             1.    Philadelphia's *Stowers* argument is an irrelevant strawman, as none
                   of the counterclaims involve unfair settlement......................................... 17

             2.    Megalomedia has alleged facts to show injury sufficient to survive
                   a 12(b)(6) motion. .................................................. 17

CONCLUSION ...................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Acad. of Allergy & Asthma v. Quest Diagnostics, Inc.*,
    998 F.3d 190 (5th Cir. 2021) ....................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................... 3

*Berge Helene Ltd. v. GE Oil & Gas, Inc.*,
    896 F. Supp. 2d 582 (S.D. Tex. 2012) ......................... 16

*Celtic Life Ins. Co. v. Coats*,
    885 S.W.2d 96 (Tex. 1994)........................................... 6

*Computer Assocs. Intern., Inc. v. Altai, Inc.*,
    918 S.W.2d 453 (Tex. 1996)...................................... 4, 5

*Cortez v. W. Mut. Ins. Co.*,
    No. 5:19-CV-430-OLG, 2019 WL 10349397 (W.D. Tex. June 24, 2019)...................... 13

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ....................................... 3

*Estate of Stonecipher*,
    591 S.W.2d 806 (Tex. 1979)......................................... 5

*Gallier v. Woodbury Fin. Servs.*,
    171 F. Supp. 3d 552 (S.D. Tex. 2016) ................... 5, 6, 8

*Henry v. Mut. of Omaha Ins. Co.*,
    503 F.3d 425 (5th Cir. 2007) ..................................... 17

*Hunton v. Guardian Life Ins. Co. of Am.*,
    243 F. Supp. 2d 686 (S.D. Tex. 2002), *aff'd*, 71 F. Appx. 441 (5th Cir. 2003).................. 6

*In re Great Lakes Dredge & Dock*,
    624 F.3d 201 (5th Cir. 2010) ....................................... 3

*In re McCoy*,
    666 F.3d 924 (5th Cir. 2012) ................................... 3, 13

*Jaso v. The Coca Cola Co.*,
    435 Fed. Appx. 346 (5th Cir. 2011)............................... 4

*Khoei v. Stonebridge Life. Ins. Co.*,
    No. CIV.A. HY-13-2181, 2014 WL 585399 (S.D. Tex. Feb. 14, 2014) .......................... 6

*Little v. Smith*,
    943 S.W.2d 414 (Tex. 1997) ................................................................................................ 5

*Margolies v. Deason*,
    464 F.3d 547 (5th Cir. 2006) ............................................................................................. 8

*Moya v. Allstate Fire & Cas. Ins. Co.*,
    No. SA-21-CV-00009-FB, 2021 WL 2917075 (W.D. Tex. Apr. 8, 2021) ..................... 13

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
    841 F.3d 669 (5th Cir. 2016) .......................................................................................... 17

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
    No. CIV.A. H-11-3061, 2015 WL 163580 (S.D. Tex. Jan. 13, 2015) ........................... 17

*Pride Transp. v. Cont'l Cas. Co.*,
    511 Fed. Appx. 347 (5th Cir. 2013) ............................................................................... 17

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011) ............................................................................................. 3

*Twin City Fire Ins. Co. v. Davis*,
    904 S.W.2d 663 (Tex. 1995) ........................................................................................... 19

*USAA Texas Lloyds Co. v. Menchaca*,
    545 S.W.3d 479 (Tex. 2018) ..................................................................................... 18, 19

**Statutes**

Tex. Bus. & Comm. Code § 17.46(b)(11) ................................................................................ 16

Tex. Bus. & Comm. Code § 17.46(b)(5) ............................................................................. 12, 13

Tex. Bus. & Comm. Code § 17.46(b)(9) .................................................................................. 16

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ........................................................................... 5

Tex. Ins. Code § 17.46(b)(12) ................................................................................................. 13

Tex. Ins. Code § 17.46(b)(14) ................................................................................................. 13

Tex. Ins. Code § 541 ....................................................................................................... passim

Tex. Ins. Code § 541.051(1)(A) ............................................................................................... 12

Tex. Ins. Code § 541.051(1)(B) ............................................................................................... 12

Tex. Ins. Code § 541.051(4) ................................................................................ 13, 16

Tex. Ins. Code § 541.051(5) ................................................................................ 16

Tex. Ins. Code § 541.060 ...................................................................................... 17

Tex. Ins. Code § 541.060(a)(2) ............................................................................ 17

Tex. Ins. Code § 541.061(1) ................................................................................ 12

Tex. Ins. Code § 541.061(2) ................................................................................ 12, 16

Tex. Ins. Code § 541.061(3) ................................................................................ 12

Tex. Ins. Code § 541.162(a) ................................................................................ 5

Tex. Ins. Code § 541.162(a)(1) ............................................................................ 5

Tex. Ins. Code § 541.162(a), (a)(2) ...................................................................... 5

Tex. Ins. Code 17.46(b)(24) ................................................................................ 13

Tex. Ins. Code Ann. art 21.21 § 4(10)(a)(ii) ........................................................ 17

**Rules**

Fed. R. Civ. P. 13(b)-(c) ...................................................................................... 14

Fed. R. Civ. P. 9(b) .............................................................................................. 2, 11, 13, 15

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................. passim

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

For ten years, Philadelphia purported to be Megalomedia's insurance carrier. Even after Philadelphia inserted a reality show exclusion in its policies starting in 2011, Philadelphia represented to Megalomedia that it was "okay" with Megalomedia's productions that were reality TV documentaries. Megalomedia, relying on those representations, continued to obtain coverage from Philadelphia over the years. Philadelphia reaped the benefits of that relationship, collecting hundreds of thousands of dollars in premiums. Then, in 2020, after claims arose in connection with the My 600-Lb Life production, Philadelphia told Megalomedia that it was denying coverage contrary to those representations. Megalomedia then learned (after Philadelphia initiated this lawsuit) that Philadelphia had *never* provided coverage for Megalomedia's productions. Now Philadelphia claims—quite remarkably—that Megalomedia should have filed suit earlier, even though Megalomedia only became aware of Philadelphia's fraudulent conduct in 2020 when Philadelphia denied Megalomedia's claim for coverage for My 600-Lb Life.

Philadelphia's motion to dismiss Megalomedia's counterclaims is without merit and should be denied.

First, Philadelphia's statute of limitations argument fails because Philadelphia ignores that limitations does not begin to run until fraud is discovered, and it is evident on the face of the counterclaim that Megalomedia did not learn of Philadelphia's fraudulent conduct until 2020, which is within the statute of limitations.

Second, Philadelphia's argument that Megalomedia has failed to state a claim for fraudulent inducement because the contract was formed prior to the alleged representations mischaracterizes Megalomedia's claims and ignores the fact that Philadelphia issued Megalomedia successive and yearly insurance policies.

Third, each of Megalomedia's counterclaims for violations of Insurance Code Chapter 541 (concerning deceptive practices) and fraudulent inducement has been pleaded with far more particularity under Rule 9 than is needed to survive a Rule 12(b)(6) motion. Each of the three representations that Philadelphia concedes is specific enough support for Megalomedia's claims, and Philadelphia ignores Megalomedia's other allegations that show that Philadelphia engaged in deceptive practices by inducing Megalomedia to enter into insurance contracts.

Finally, Philadelphia's argument that Megalomedia has failed to plead a viable Chapter 541 claims fails because Megalomedia has not alleged an unfair settlement claim under *Stowers* is a strawman that mischaracterizes the nature of Megalomedia's claims. And Megalomedia has clearly alleged an independent injury—its loss of premiums, among others—that is sufficient under the law.

## II.    NATURE AND STAGE OF THE PROCEEDING

This Court recently denied Philadelphia's motion for summary judgment on Megalomedia's original counterclaims and allowed Megalomedia to amend its counterclaims. Minute Entry, July 9, 2021; ECF 49, Order Granting Megalomedia Mot. to File 1st Am. Countercl. Megalomedia amended its counterclaims on July 14, 2021. ECF 50, Defs.' 1st Am. Countercl. ("Am. Countercl."). Philadelphia filed its motion to dismiss under 12(b)(6) on July 28, 2021. ECF 51, Philadelphia's Rule 12(b)(6) Mot. to Dismiss Defs.' Countercl. ("Mot"). The discovery period is ongoing. ECF 48, Scheduling Order. Trial is set for March 2022. *Id.*

## III.    ISSUES PRESENTED

1.    Has Philadelphia met its burden of demonstrating that it is evident from the Amended Counterclaim that all of Megalomedia's claims are barred by the statute of limitations and there is no basis for tolling?

2

2.    Has Megalomedia set forth sufficient factual allegations that, assuming them to be true, raise a right to relief above the speculative level for its various counterclaims?

## IV.    LEGAL STANDARD

"A motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a 12(b)(6) motion, a court is to "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock*, 624 F.3d 201, 210 (5th Cir. 2010).

A motion to dismiss under 12(b)(6) cannot be used to resolve factual issues or the merits of the case. *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012); *see also* ECF 13, Mem. & Order at 1 (instructing parties to "**not** designate a motion as one to dismiss an action under Rule 12(b)(6) that is in essence a motion for summary judgment.").

## V.    ARGUMENT

**A.    Philadelphia's limitations argument should be denied because Philadelphia ignores the discovery rule and Megalomedia's allegations that toll the limitations period.**

Philadelphia's statute of limitations defense is based on an incorrect legal standard, ignores key allegations from the counterclaim, and is precluded from being granted in a 12(b)(6) motion.

3

"Dismissal for failure to state a claim based on the statute of limitations defense should be granted *only* when the plaintiff's *potential* rejoinder to the affirmative defense was *foreclosed* by the allegations in the complaint." *Acad. of Allergy & Asthma v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021) (cleaned up) (emphasis added). Such a high bar exists because "[a] plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense." *Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 351 (5th Cir. 2011). Instead, "[t]he burden of pleading and establishing the statute of limitations defense falls upon the defendant." *Id.* Thus, a limitations defense "only" can be properly raised in a 12(b)(6) motion where it is "evident from the complaint" that the action is barred and there is no basis for tolling. *Id.* (cleaned up). Here, Philadelphia fails to establish that any "potential rejoinder" to its limitations defense is "foreclosed" by the allegations in Megalomedia's Counterclaim.

As set forth below, Megalomedia's counterclaims involve three causes of actions: two for Philadelphia's violations of Insurance Code Chapter 541 ("Chapter 541") through deceptive practices, Am. Countercl. ¶¶ 64-89, and the other for fraudulent inducement, *id.* ¶¶ 53-63. Those counterclaims are timely because Philadelphia issued its first coverage denial letter and revealed its prior acts and statements were fraudulent and deceptive less than two years ago.

### 1. Philadelphia ignores both the discovery rule and the fraud rule.

First, Philadelphia ignores both the discovery rule and the fraud rule, and applies the incorrect legal standard in its limitations defense. "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Under the fraud rule, "[s]imilar to the discovery rule exception, where fraud is alleged, [Texas law] grant[s] the claimant the benefit of deferring the cause of action until the claimant discovered or should have discovered the fraud." *Id.* This prevents a defendant

4

from reaping additional benefits from its fraud and concealment by using the statute of limitations as an affirmative defense. *Id.* at 456.

With respect to the Chapter 541 counterclaims. Philadelphia selectively cites only a portion of Chapter 541's limitations provision to assert that the limitations period for a Chapter 541 cause of action begins to run "on the date the . . . unfair or deceptive act or practice occurred." Mot. at 5 (citing Tex. Ins. Code § 541.162(a)(1)). But Chapter 541 provides for a two-year limitations period that *expressly incorporates the discovery rule*. Tex. Ins. Code § 541.162(a). The statute provides that a person need only bring a Chapter 541 action before the "second anniversary" of "the date the person *discovered* or, by the exercise of reasonable diligence, should have discovered that the . . . unfair or deceptive act or practice occurred." *Id.* § 541.162(a), (a)(2) (emphasis added); *see, e.g.*, *Gallier v. Woodbury Fin. Servs.*, 171 F. Supp. 3d 552, 561–62 (S.D. Tex. 2016) (applying Chapter 541's discovery rule and denying summary judgment on limitations).

As to the fraudulent inducement counterclaim, it has a limitations period of four years that, under the fraud rule, does not commence to run until the fraud is discovered or should been discovered with reasonable diligence. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); *Gallier*, 171 F. Supp. 3d at 562–63 ("Where fraud is alleged, [the Texas Supreme Court] ha[s] granted the claimant the benefit of deferring the cause of action until the claimant discovered or should have discovered the fraud." (cleaned up)). Philadelphia fails to apply the correct standard to this claim as well. Contrary to Philadelphia's assertions, "[i]n a fraud case, the 'statute of limitations *does not commence to run until the fraud is discovered* or until it might have been discovered by the exercise of reasonable diligence.'" *Gallier*, 171 F. Supp. 3d at 563 (quoting *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997)) (emphasis added)); *see also Estate of Stonecipher*, 591 S.W.2d 806, 809 (Tex. 1979) (Texas "courts have consistently held that fraud vitiates whatever it touches, and

that limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence" which  is a "question of fact.") (citations omitted)). This rule applies even in the insurance context. *See, e.g.*, *Gallier*, 171 F. Supp. 3d at 562–63.[1] In most cases, a fraud-based claim against an insurer "generally accrues on the date the insurer denies coverage" because that is "the time when facts come into existence that authorize a claimant to seek a judicial remedy." *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994), *as modified after rehearing* (Dec. 22, 1994).[2]

On this ground alone, Philadelphia's attempt to dismiss Megalomedia's counterclaims based on limitations must fail.

### 2.    Megalomedia alleges sufficient facts that show that any limitation period should be tolled based on the discovery rule.

Here, even though not required, Megalomedia has alleged facts that, taken as true, show the earliest discovery date from which its actions accrued and limitations began to run was in 2020.

---

[1] *Gallier* denied a summary judgment motion on limitations. 171 F. Supp. 3d at 562. Of course, because this is a 12(b)(6) motion to dismiss, Philadelphia's burden is even higher.

[2] Philadelphia cites *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686 (S.D. Tex. 2002), *aff'd*, 71 F. Appx. 441 (5th Cir. 2003), and *Khoei v. Stonebridge Life. Ins. Co.*, No. CIV.A. HY-13-2181, 2014 WL 585399 (S.D. Tex. Feb. 14, 2014) for the proposition that alleged representations when "selling the policy" accrue when "the policy is first issued." Mot. at 5. These cases are readily distinguishable. *Hunton* is a summary judgment case, and further, is based on a review of evidence as to the fact issue of reasonable diligence to discover fraud, and is therefore inapposite. *Hunton*, 243 F. Supp. 2d. at 696, 701.  *Khoei*, an unpublished opinion, involves a one-time misrepresentation by a telemarketer as to what a life insurance policy would be written to cover, after which the plaintiff purchased a policy that did not include that coverage. 2014 WL 585399, at *1. Here, by contrast, Philadelphia's continuing representations concern *how* subjective language in the policies would be and was being *applied*, not about what language the policies contained. The representation that Philadelphia was "okay" with Megalomedia's productions suggests that Philadelphia's reality show exclusion involved only those shows like "Cartel City" that were violent. From 2011 on, Philadelphia made further misrepresentations as to the exclusion's impact—*how* Megalomedia's submitted productions had been evaluated and *accepted* (rather than rejected) under the exclusion. Further, Philadelphia's representations and omissions occurred over time, and induced Megalomedia to purchase insurance from Philadelphia on a yearly basis. Thus, Philadelphia's fraudulent misrepresentations were inherently undiscoverable until Megalomedia made a claim for My 600-Lb Life and that claim was denied—all in 2020.

6

For the fraudulent inducement and Chapter 541 counterclaims that concern My 600-Lb Life, Megalomedia sets forth allegations showing that in 2020 (1) Megalomedia submitted claims to Philadelphia related to My 600-Lb Life, and (2) Philadelphia denied those claims and first told Megalomedia the production was not covered. That was also when Megalomedia discovered Philadelphia's earlier statements and acts—that Philadelphia had reviewed Megalomedia's Film Production Supplemental Applications ("Supplemental Applications') requesting coverage for My-600 Lb Life, made a determination that My 600-Lb Life was not a "reality show" (which is undefined in the policies and elsewhere), and had accepted My 600-Lb Life for coverage—were actually misrepresentations and deceptive practices.[3] *See, e.g.*, Am. Countercl. at 9-10 (alleged facts in section titled "After Megalomedia Is Hit With Litigation and Files a Claim, Philadelphia Tells Megalomedia that its Productions Were Never Covered"); *id.* ¶ 59 ("[a]t no point in time until the Underlying Litigation was filed did Philadelphia explicitly advise Megalomedia that it considered My 600-Lb Life a 'reality show' or that it was not providing coverage for My 600-Lb Life"); *see also id.* ¶¶ 10-12, 18, 33, 36-44, 60. In sum, these alleged facts, which must be taken as true, show that Megalomedia did not discover the fraud of Philadelphia's representations as to My 600-Lb Life until, at the earliest, 2020.

Next, because Philadelphia has now denied that it ever provided commercial general liability coverage for any of Megalomedia's productions, Megalomedia's counterclaims are larger

---

[3] Improperly lumping all of Megalomedia's counterclaims together, Philadelphia asserts that all the counterclaims accrued when the policy was first issued with the reality exclusion language in 2011. Mot. at 5, 8. But Megalomedia's counterclaims are not based on misrepresentations or deceptive acts relating to the fact of the reality show exclusion or its mid-term addition to the policy. Again, Megalomedia's counterclaims are based on false and deceptive representations and acts by Philadelphia concerning *how the exclusion would apply*, and was purportedly being applied, in relation to the Supplemental Applications that Megalomedia submitted, and how those determinations were communicated (or not) to Megalomedia.

than just My 600-Lb Life, and include fraud and deceptive practices related to Megalomedia's other productions and Philadelphia's business dealings more generally. For these broader portions of the counterclaims, the alleged facts, taken as true, show the discovery date is later, because the sweeping breadth of Philadelphia's deceptive acts were revealed through documents produced and admissions made in discovery in this case. This includes, for example, Philadelphia's stunning admission that it *never* provided commercial general liability coverage for *any* of Megalomedia's productions. *See* Am. Countercl. at 11 (showing Philadelphia's discovery responses). When Philadelphia made these admissions, Megalomedia discovered that even more of Philadelphia's earlier statements and acts were misrepresentations and deceptive practices. *See id.* ¶¶ 45, 47.

The bottom line is that even assuming all of Megalomedia's counterclaims accrued at the same time and at the earliest of the alleged discovery dates—when Philadelphia denied coverage—that date is still 2020, well within even the shorter two-year limitations period for the Chapter 541 claims. All of Megalomedia's counterclaims are timely.

At the very least, determining each counterclaims' respective discovery date is a contested issue of material fact. When discovery dates are at issue in relation to Chapter 541 or fraud claims, "[the] Fifth Circuit has recognized, determining when a plaintiff was on inquiry notice of fraud is a 'fact-intensive inquiry . . . typically appropriate for consideration by a jury.'" *Gallier*, 171 F. Supp. 3d at 562 (citing *Margolies v. Deason*, 464 F.3d 547, 553 (5th Cir. 2006)). Although Philadelphia argues limitations began to run in 2011, Mot. at 8, Megalomedia's Counterclaim expressly alleges different discovery periods, with discovery occurring in 2020 and later. Because when Megalomedia discovered the fraud is a contested issue of fact——Philadelphia's argument fails at the motion to dismiss stage.

**B.    Megalomedia's fraudulent inducement claim survives because each Philadelphia insurance policy is separate and was formed after the misrepresentations.**

Philadelphia contends that the Counterclaim fails to state a claim for fraudulent inducement because "the contract was formed prior to the alleged misrepresentations." Mot. at 9. This argument is based on a premise that there is but a single contract at issue in this case, the first policy that was issued in 2010. Mot. at 10. That premise is wrong.

Megalomedia has alleged sufficient facts that, taken as true, show that "for years," from 2010 to 2020, Megalomedia annually obtained new insurance policies through a submission, review, offer, and binding process that established a new contract with new premiums each year. Am. Countercl. ¶¶ 9-10, 15-17, 25-28, 29-30, 32, 54. For these renewals, in order to obtain a new insurance policy from Philadelphia, Megalomedia submitted Supplemental Applications to Philadelphia that listed and described Megalomedia's productions for which it sought commercial general liability coverage. *Id.* ¶ 28. Each time, Philadelphia "approved the application and entered into an insurance contract with Megalomedia." *See id.* ¶ 30. Megalomedia, in turn, paid the premiums. *Id.* ¶ 28. Despite going through this application, review, offer, and binding process for 10 years, Philadelphia never told Megalomedia it was not actually providing coverage for key productions such as Heavy, My 600-Lb Life, or Quintuplets By Surprise. *Id.* ¶¶ 25-35, 60-62. Philadelphia's responses and acceptance of Megalomedia's Supplemental Applications constituted material misrepresentations and omissions that induced Megalomedia into entering into the new policies. *Id.*

Even as to the initial 2010 insurance contract, Philadelphia's argument that "the contract was formed prior to the alleged misrepresentations" is simply wrong. Mot. at 9-10. Megalomedia has alleged facts showing that Heavy and Quintuplets by Surprise were listed on the first Supplemental Application that Megalomedia submitted to Philadelphia in 2010 to obtain an offer

for the first insurance policy. Am. Countercl. ¶¶ 15-17. Philadelphia never told Megalomedia that it could not, or would not, cover those key productions. *Id.* ¶¶ 17-18, 33, 35. Instead, to land Megalomedia's account, Philadelphia responded by accepting Megalomedia's application, and fraudulently induced Megalomedia into purchasing the first policy, instead of renewing with its existing carrier. *Id.* ¶¶ 12-17, 33, 46.

Philadelphia's alternative argument that the "representation[s] alleged occurred after the 2011 renewal, which . . . is after the reality TV show exclusion was already on the policy," Mot. at 11, does nothing to alter the sufficiency of Megalomedia's allegations. To the opposite, Philadelphia continued to request Supplemental Applications, and then continued to respond to the Supplemental Applications by providing insurance offers, but no rejection of the key productions, establish additional misrepresentations and ommissions from 2011 on. This is because the policies do not, and have never, defined the term "reality show" or identified which Megalomedia productions are "reality shows." Am. Countercl. ¶ 57. Thus, under the renewal structure, for each production Megalomedia submitted, Philadelphia needed to determine if the production was a "reality show" that was excluded from coverage and would not be part of the premium basis, and if so, needed to communicate that to Megalomedia. *Id.* ¶¶ 27, 33, 47-52. After the "reality show" exclusion was added, Philadelphia should have made sure Megalomedia's projects were "acceptable" to Philadelphia and "fit into [Philadelphia's] guidelines," *id.* ¶ 26, especially given Megalomedia's expressed concern that it was producing "documentary type shows which [Philadelphia] knew about when [it] first wrote this policy,'" *id.* ¶ 25. Philadelphia did not do so.

These facts, taken as true, show Megalomedia obtained new policies with Philadelphia each year based on Philadelphia's mounting misrepresentations (and omissions) related to this submission-acceptance process in which Philadelphia was purportedly conducting "acceptable-

for-coverage determinations," the fraud of which Megalomedia did not begin to discover until 2020. *Id.* ¶¶ 9-10, 25-32, 47-63. Megalomedia justifiably relied on Philadelphia's misrepresentations as to which productions the policies would cover and would not cover, and "Megalomedia *continued to purchase insurance* from Philadelphia based on those misrepresentations." *Id.* ¶ 62 (emphasis added). "Had Megalomedia received rejection of a key production—or had Megalomedia been informed that none of its productions were covered— Megalomedia would not have paid [Philadelphia] for commercial general liability insurance." *Id.* ¶ 35.

Megalomedia has pleaded more than sufficient facts concerning the contract-timing component of fraudulent inducement that Philadelphia challenges.

**C.   Megalomedia's counterclaims sufficiently satisfy Rule 9(b).**

Philadelphia's argument that Megalomedia's fraudulent inducement and Chapter 541 claims fail to satisfy Federal Rule 9(b)'s particularity requirement ignores Megalomedia's actual allegations and does not support dismissal.

> **1.   The misrepresentations Philadelphia *admits* are sufficiently specific are, alone, more than sufficient to satisfy Rule 9(b).**

For starters, Philadelphia *admits that Megalomedia alleges at least three specific misrepresentations* that meet Rule 9(b)'s particularity requirements. Mot. at 12. These allegations satisfy Rule 9(b) and establish Megalomedia's causes of action.

These allegations state that around June 3, 2011, Philadelphia employee Melissa Relf told Megalomedia that Philadelphia "underwriting reviewed" and rejected the show Cartel City because it was "more like a reality show than a documentary." Am. Countercl. ¶¶ 20-21. When Megalomedia's broker protested, another Philadelphia employee Don Stalnaker intervened to save the account and made promises that Philadelphia would provide coverage to Megalomedia's other

shows. *Id.* ¶ 22. Stalnaker told Megalomedia the danger associated with the show was too problematic for "this one" and assured Megalomedia that Philadelphia was "okay with the other work that they are doing, just not this particular project." *Id.* At that time, the "other work" Philadelphia was "okay with" included, at minimum, reality television documentaries like Heavy and Quintuplets by Surprise, and other productions Megalomedia had listed on the 2010 Supplemental Application. *Id.* ¶¶ 16-17, 33. Again, Philadelphia admits these allegations are sufficiently particular. Mot. at 12.

Now that Megalomedia has discovered that Philadelphia (1) never provided coverage for these, or any, productions, and (2) does not have any standardized methodology or guidelines in place for reviewing Megalomedia's productions and did not actually conduct reviews to determine whether each production was more like a documentary as opposed to a "reality show," these representations were fraudulent misrepresentations, both as to coverage and review. Am. Countercl. ¶¶ 32, 45-55, 57-58, 61-63.[4] The misrepresentations in paragraphs 21 and 22 alone serve as a basis for Megalomedia's counterclaims for fraudulent inducement, and the various violations of Chapter 541.[5] These claims are plead with sufficient particularity to satisfy

---

[4] Philadelphia's argument that Megalomedia has failed to assert these statements were misrepresentations because the Counterclaim refers to them as "representations" and does not allege they are false in paragraphs 21 and 22 "or the surrounding paragraphs" is also wrong. Mot. at 13. The Counterclaim methodically sets forth Philadelphia's representations and acts sequentially, and then alleges facts showing they turned out to be misrepresentations and deceptions. *See, e.g.*, Am. Countercl. ¶ 32 (Philadelphia's assurances that "it was covering productions and that it was OK with Megalomedia's other productions . . . turned out to be false.").
[5] The Chapter 541 violations supported by these alleged facts are housed within both the second and third causes of action and include misrepresentations of the policies through violations of (1) Tex. Ins. Code § 541.051(1)(A) (misrepresenting the policies' terms); (2) *id.* § 541.051(1)(B) (misrepresenting benefits or advantages); (3) *id.* § 541.061(1) (making untrue statements of material fact); (4) *id.* § 541.061(2) (failing to state material facts necessary to make other statements made not misleading); (5) *id.* § 541.061(3) (making statements in a manner that would mislead a reasonably prudent person to false conclusions); (6) Tex. Bus. & Comm. Code § 17.46(b)(5) (representing that insurance services had characteristics which they did not); (7) *id.* §

Rule 9(b).[6]

>    **2.    Philadelphia's attempts to dispute other alleged facts and argue the merits of the misrepresentations must fail.**

After admitting that the misrepresentations in paragraphs 21 and 22 (and others) are sufficiently particular, Philadelphia spends five pages disputing the factual weight of other representations and tackling those allegations on the merits, all inappropriate to a 12(b)(6) motion. Mot. at 12-16. For example, Philadelphia asks the Court to consider extrinsic evidence in proving that that one of the misrepresentations was never communicated to Megalomedia. Mot. at 15 & n. 11. Philadelphia's arguments are outside the scope of a 12(b)(6) motion, which relates to the plausibility of all well-pleaded allegations (which are accepted as true). *In re McCoy*, 666 F.3d at 926.

Next, Philadelphia's argument that the admittedly-particular misrepresentations "are about other TV shows" than My 600-Lb Life also fails. Mot. at 11, 12-13. Nothing in the Counterclaim

---

17.46(b)(5) (same, but as to policies); (8) *id.* § 17.46(b)(12) (representing that an agreement involves rights or obligations it does not); (9) *id.* § 17.46(b)(14) (misrepresenting the authority of a salesman); and (10) *id.* § 17.46(b)(24) (failing to disclose information concerning the policies and insurance services which was known at the time and intended to induce).

[6] Although Megalomedia has alleged facts of misrepresentations with the "who, what, when, where, and why," that standard does not apply to all of its claims, as Philadelphia argues. The "who, what, when, where, and why" requirement is for misrepresentations under Federal Rule 9(b) and only applies to "certain claims asserted under Section 541." *Cortez v. W. Mut. Ins. Co.*, No. 5:19-CV-430-OLG, 2019 WL 10349397, at *2 (W.D. Tex. June 24, 2019). Further, there are certain Chapter 541 violations for which the misrepresentation is not a statement by a person, but within the insurance policy itself. *See, e.g.*, Tex. Ins. Code § 541.051(4) ("use a name or title of a policy . . . that misrepresents the true nature"). Megalomedia has sufficiently alleged facts of the misleading terminology Philadelphia used. Am. Countercl. ¶¶ 66, 68-69 (Philadelphia titled the polices as "film production," "general liability," and "entertainment package," despite their true nature). Most recently, the Western District of Texas rejected a similar argument that a claimant "failed to allege the 'who, what, when, where, how,'" because the alleged fraud was not complex, and involved allegations that Allstate had an unwritten policy related to payment of benefits that it failed to disclose, and that the insurance policy on its face failed to disclose. *Moya v. Allstate Fire & Cas. Ins. Co.*, No. SA-21-CV-00009-FB, 2021 WL 2917075, at *5 (W.D. Tex. Apr. 8, 2021), *report and recommendation adopted*, 2021 WL 2917090 (W.D. Tex. May 13, 2021).

cabins it to My 600-Lb Life. Megalomedia is the master of its complaint, and is entitled to plead all the counterclaims it has against Philadelphia; the scope of Philadelphia's original lawsuit does not matter. *See* Fed. R. Civ. P. 13(b)-(c). When it was revealed in discovery in this case that Philadelphia *never* provided coverage for *any* of Megalomedia's productions, Am. Countercl. ¶¶ 45-46, Megalomedia discovered that *all* of Philadelphia's representations about its provision of commercial general liability insurance for *all* of Megalomedia's productions were fraudulent. *See id.* The Pandora's box of Philadelphia's fraud has been opened and Philadelphia cannot shut it by pretending the broader allegations do not exist.

Similarly, Philadelphia is wrong that because the misrepresentations in paragraphs 21 and 22 do not pertain to My 600-Lb Life, "the Court cannot draw any reasonable inference that they caused the damages Megalomedia seeks to recover." Mot. at 13-14. Indeed, Philadelphia's assertions that there are "My 600-Lb Life policies" and that Megalomedia only "seeks damages for the premiums it paid for the My 600-Lb policies" are incorrect. *Id.* There is no such thing as only "My 600-Lb Life policies" in the allegations (or in fact) and Megalomedia's alleged facts pertaining to damages are not cabined to My 600-Lb Life. *See* Am. Countercl. ¶¶ 62-63, 73, 87. Philadelphia issued one broad policy each year to Philadelphia for commercial general liability insurance, among other coverages, and in many years, a policy for commercial umbrella insurance. *Id.* ¶ 7. Megalomedia has sufficiently alleged facts that show Philadelphia never provided commercial general liability coverage for *any* of Megalomedia's productions, but made misrepresentations on which Megalomedia reasonably relied and continued to purchase coverage—that is, Philadelphia was "okay with the other work that they are doing, just not this particular project." *Id.* ¶ 22. Had Megalomedia known none of its productions were actually covered, i.e., that Philadelphia was not "okay" with Megalomedia's "other work," Megalomedia

14

would not have paid for commercial general liability coverage and would have obtained the coverage from another carrier. *Id.* ¶ 35; *see also id.* ¶¶ 47-52. Thus, Megalomedia seeks damages for the premiums it paid, and the consequential damages that have arisen because it purchased policies from Philadelphia (based on Philadelphia's misrepresentations) rather than obtaining those policies from another carrier. *Id.* ¶¶ 62-63, 73, 87.

### 3. Megalomedia has alleged additional misrepresentations that are sufficiently specific.

On top of those misrepresentations that Philadelphia admits are sufficiently particular, Megalomedia has alleged additional misrepresentations or omissions that satisfy Rule 9(b). As stated above, these include:

- From 2010 to 2020, Megalomedia annually obtained new insurance policies through a submission, review, offer, and binding process. Am. Countercl. ¶¶ 9-10, 15-17, 25-30, 32, 54. Philadelphia requested Megalomedia to submit Supplemental Applications listing the productions for which it sought coverage. *Id.*

- After receiving the Supplemental Applications, Philadelphia responded by providing offers of insurance, with no rejection of key productions. *Id.* ¶¶ 16-18, 25-30.

- It is now known these representations were false or were material omissions. Philadelphia not only disclaims coverage for My 600-Lb Life, but that it ever provided *any* coverage for *any* production. *See, e.g., id.* ¶¶ 10-12, 36-43, 45-46, 52, 55, 59-61.

- Philadelphia's misrepresentations induced Megalomedia to enter into the new policies, to its detriment and injury. *See, e.g., id.* ¶¶ 13-17, 32-35, 59-63, 70-73, 78, 81, 85-87.

- The first instance of Philadelphia's annual misrepresentations occurred in 2010, *id.* ¶¶ 13-17, and caused Megalomedia to switch from its existing carrier and instead procure insurance from Philadelphia, *id.* ¶¶ 66-67, 70. As to My 600-Lb Life, the first instance as to that particular production occurred in 2012. *Id.* ¶¶ 29-31.

Further, Megalomedia has alleged that Philadelphia *knew* it was a misrepresentation to respond with an offer and not an express rejection of the submitted productions, as that is against Philadelphia's unwritten policies and practices (and contrary to Philadelphia's express rejections of productions filming law enforcement officers). *Id.* ¶¶ 18-22, 26-27, 31, 33. The Counterclaim specifically alleges, as one Philadelphia employee testified: "If we didn't cover one [a production],

the agent would have submitted it and we would have told them we weren't." *Id.* ¶ 33; *see also id.* ¶ 27 (in 2011, Philadelphia's practice, according to an email, was that if a show was on the "'supp[lemental application] last year . . . it has been [or should be] included on the new and renewal policies'" ).

The above-described misrepresentations, which involve specific affirmative misrepresentations and fraud by omission,[7] serve as an additional basis for the fraudulent inducement claim and the numerous violations of Chapter 541 listed in footnote 6 *supra*, as well as five additional violations of Chapter 541 and are pled with sufficient particularity.[8]

**D.    Megalomedia's Chapter 541 Counterclaims Survive.**

On this issue, Philadelphia restates its arguments from its motion for summary judgment that the Court denied in its July 9, 2021 order. *See* ECF No. 42, Philadelphia's Mot. for Summ. J. at 8-16; Mot. at 18-20. Philadelphia's arguments are even more inappropriate in a 12(b)(6) motion and must fail.

---

[7] *See, e.g.*, Tex. Ins. Code § 541.061(2) (violation by "failing to state material facts necessary to make other statement made not misleading, considering the circumstances under which the statements were made"); *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 619 (S.D. Tex. 2012) (as to fraudulent inducement, "[f]raud by omission is a subcategory of fraud because the omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose.").

[8] Three of these violations are alleged within Megalomedia's second cause of action, and two are within the third. The violations are of (1) Tex. Ins. Code § 541.051(5) (misrepresentations to induce surrender of an existing policy); (2) *id.* § 541.051(4) (using names and titles for policies that misrepresent their true nature); (3) *id.* § 541.051(4) (same, but as to policy class); (4) Tex. Bus. & Comm. Code § 17.46(b)(9) (advertising policies and insurance services with an intent not to sell them as advertised); and (5) *id.* § 17.46(b)(11) (making false or misleading statements of fact concerning the reasons for price reductions). Megalomedia incorporates its arguments in footnote 7, *supra* as to these violations as well.

     1.     **Philadelphia's *Stowers* argument is an irrelevant strawman, as none of the counterclaims involve unfair settlement.**

Philadelphia argues that it did not breach its *Stowers* duty. Mot. at 18. Whether Philadelphia breached a *Stowers* duty is irrelevant because Megalomedia has not alleged any breach of a *Stowers* duty. The *Stowers* duty involves unfair settlement practices or the failure to settle. The cases Philadelphia cites to in its motion involve violations of Texas Insurance Code section 541.060, or its predecessor, Article 21.21. *See, e.g.*, *Pride Transp. v. Cont'l Cas. Co.*, 511 Fed. Appx. 347, 348 (5th Cir. 2013) (involving an alleged violation of the Texas Insurance Code § 541.060(a)(2)); *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 427 (5th Cir. 2007) (involving the insurer's failure to attempt in good faith to effectuate a fair settlement under Tex. Ins. Code Ann. art 21.21 § 4(10)(a)(ii)).[9] None of Megalomedia's counterclaims involve Texas Insurance Code section 541.060, or implicate unfair settlement claims. Thus, Philadelphia's argument is entirely irrelevant, and Megalomedia's Chapter 541 claims, all of which have nothing to do with *Stowers*, continue to survive the 12(b)(6) motion.

     2.     **Megalomedia has alleged facts to show injury sufficient to survive a 12(b)(6) motion.**

Philadelphia's final argument as to Megalomedia's Chapter 541 claims is that Megalomedia has not pleaded an "independent injury." That argument fails for two reasons.

---

[9] Philadelphia's assertion that "numerous courts, including the Fifth Circuit, have held, whether a liability insurer violated Chapter 541 turns on whether it violated its *Stowers* duty" implies that *every* claim brought under Chapter 541 implicates a *Stowers* duty question. Mot. at 18. This is simply not true. Philadelphia cites to *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. CIV.A. H-11-3061, 2015 WL 163580, at *3 (S.D. Tex. Jan. 13, 2015) but fails to address its subsequent history in which the Fifth Circuit acknowledged that "[t]he Texas Supreme Court has held that a party bringing a claim under Chapter 541 **premised on the failure to settle** must meet the requirements of a *Stowers* claim." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 682 (5th Cir. 2016) (emphasis added). It is only in another section of its motion, that Philadelphia later acknowledges there exist "Chapter 541 claims outside of the *Stowers* context." Mot. at 18.

First, Philadelphia's incomplete discussion of *Menchaca*, Mot. at 18-20, ignores that case's discussion of the benefits-lost rule. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 497-99 (Tex. 2018). The benefits-lost rule establishes that "an insured can recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right." *Id.* at 497. The benefits-lost rule applies in three contexts, one of which is the misrepresentation of policy coverage. *Id.* at 497-98. As *Menchaca* sets forth, "***an insurer that violates the statute [Chapter 541] by misrepresenting that its policy provides coverage that it does not in fact provide can be liable under the statute for such benefits if the insured is adversely affected or injured by its reliance on the misrepresentation.***" *Id.* at 497 (internal marks omitted) (emphasis added). That is exactly what Megalomedia has alleged here. These allegations, which must be taken as true, show the benefits-lost rule applies to Megalomedia's alleged damages. *Id.* at 497-98. This alone is sufficient to refute Philadelphia's damages-element argument.

Second, even if the benefits-lost rule did not exist, Megalomedia has alleged more than sufficient facts to state damages under the portion of *Menchaca* Philadelphia *does* cite. Philadelphia admits that even an insured that is "not entitled to policy benefits may still recover if the insurer committed some 'extreme' act that caused an injury that is independent of the insurance claim." Mot. at 18-19 (quoting *Menchaca*, 545 S.W.3d at 499). Here, Megalomedia has alleged numerous facts that, taken as true, establish that Philadelphia, in its 10 years of *knowing* misrepresentations that it was accepting and providing coverage for Megalomedia's key productions when in fact it was not, *see, e.g.*, Am. Countercl. ¶¶ 25, 27, 33, 45-46, committed acts that are "so extreme, that would cause injury independent of the policy claim," *see Menchaca*, 545 S.W.3d at 499 (quotation omitted). *See also* Parts V(C)(1) and (3) *supra*.

As noted above, Philadelphia attempts to improperly dispute the alleged facts and have the Court decide them on the merits—now on the fact issue of whether Philadelphia's unfair and deceptive conduct was "extreme." Mot. at 19. Again, this is wholly inappropriate for a 12(b)(6) motion. Philadelphia's conclusory attempt to characterize all of Megalomedia's alleged injuries as an insurance claim also attempts to dispute the alleged facts rather than taking them as true. Mot. at 19. As alleged, Megalomedia's damages stem from Philadelphia's misrepresentations and deceptive acts prior to and during Megalomedia's decision to obtain coverage and new policies—*not* from any misrepresentations during denial of a claim. Indeed, one of Megalomedia's claims for damages is policy premiums.[10] Am. Countercl. ¶¶ 63, 73, 87. Had Philadelphia not misrepresented that it would provide coverage for key productions, Megalomedia would not have paid Philadelphia for commercial general liability coverage. Similarly, Megalomedia's claims for consequential damages, *id.* (e.g., loss of business reputation, other carriers' increased premiums, costs of litigating non-covered claims), taken as true and construed in Megalomedia's favor, do not originate in misrepresentations made in denial of a claim, but originate from Philadelphia's misrepresentations and deceptive acts in the *issuance of the policies*—requesting Megalomedia to provide Supplemental Applications describing the productions for which coverage was sought, purporting to conduct an acceptable-for-coverage-review, and responding by accepting the Supplemental Applications and offering insurance policies, with no rejection of the key productions. *See, e.g.*, *id.* ¶¶ 13-52. Philadelphia's misrepresentations caused Megalomedia to not

---

[10] Philadelphia incorrectly equates premiums with policy benefits. In discussing the independent-injury rule, *Menchaca* made clear that "an insured can recover actual damages caused by the insurer's bad-faith conduct if the damages 'are separate from and … differ from benefits under the contract.'" 545 S.W.3d at 499 (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995)). Premiums, i.e., money paid to obtain a contract, are necessarily separate from and differ from benefits that the paid-for contract provides.

obtain policies that actually provided coverage for the submitted productions, including My 600-Lb Life, from a different carrier. *Id.* ¶¶ 13-17, 22, 29-30, 32-35, 50-52, 70. Had Philadelphia's representations been true, Megalomedia would not be in its current situation.

## CONCLUSION

For the foregoing reasons, Philadelphia's 12(b)(6) motion to dismiss Megalomedia's counterclaims should be denied. If the Court finds that any counterclaim does not state a claim under Rule 12(b)(6), Megalomedia requests leave to amend.

Respectfully submitted,

By:      */s/Santosh Aravind*
          Steve McConnico (attorney-in-charge)
          smcconnico@scottdoug.com
          Texas Bar No. 13450300
          S.D. Texas No. 2879
          Santosh Aravind
          saravind@scottdoug.com
          Texas Bar No. 24095052
          S.D. Texas No. 2887372
          Stephanie Kover
          skover@scottdoug.com
          Texas Bar No. 24102042
          S.D. Texas No. 3101605
          **SCOTT DOUGLASS & MCCONNICO, LLP**
          303 Colorado Street
          Suite 2400
          Austin, TX 78701
          (512) 495-6300
          (512) 495-6399 Fax

          ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by ECF on August 18, 2021:

Stephen A. Melendi
Matthew Rigney
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199
stephenm@tbmmlaw.com
mattr@tbmmlaw.com

*/s/Santosh Aravind*
Santosh Aravind

21