United States District Court
Southern District of Texas
**ENTERED**
September 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEGALOMEDIA, INC., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-01644 |
| | § | |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants/Counter-Plaintiffs Megalomedia, Inc., Megalomedia Studios, LLC, Mansfield Films, LLC, and DBA Holdings, LLC (collectively "Megalomedia") filed amended counterclaims against Plaintiff/Counter-Defendant Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") alleging: (1) fraudulent inducement, (2) violations of Chapter 541, Subchapter B of the Texas Insurance Code (hereinafter the "Insurance Code"), and (3) violations of the Texas Deceptive Trade Practices Act (hereinafter the "DTPA"). Doc. #50. On August 16, 2022, the Court partially granted Philadelphia Indemnity's Motion for Summary Judgment (Doc. #68) with respect to Megalomedia's extracontractual claims, but denied it with respect to Megalomedia's fraudulent inducement, Insurance Code, and DTPA claims. Doc. #80. On February 21, 2023, the above-captioned case proceeded to trial before this Court. Megalomedia appeared by and through their counsel of record and Philadelphia Indemnity appeared by and through its counsel of record. After considering the pleadings, the evidence, the arguments, and authorities presented by counsel and the parties, the Court makes its findings of fact and conclusions of law as attached hereto.

## FINDINGS OF FACT

1.      Megalomedia is a television production studio based in Austin, Texas. Megalomedia has produced programs such as *Shipping Wars*, *Heavy*, and *My 600-Lb Life*.  Doc. #108 at 6:8–11 (Westberry).

2.      Jonathan Nowzaradan ("Nowzaradan") has been Megalomedia's president and executive producer since the company's inception approximately 20 years ago.  Doc. #108 at 147:5–9 (Nowzaradan).

3.      Toni Westberry ("Westberry") has worked at Megalomedia for more than 12 years and has been the Chief Financial Officer (CFO) since 2018.  Doc. #108 at 6:6–24.  Her CFO responsibilities are to oversee the accounting department and other general business activities, including obtaining insurance. *Id.* at 6:25–7:24.

4.      In 2010, Megalomedia sought to obtain commercial general liability insurance coverage for its television productions.   Don Stalnaker ("Stalnaker"), a marketing rep for Philadelphia Indemnity, told Jason McKinley ("McKinley"), an insurance broker and Nowzaradan's personal friend, about Philadelphia Indemnity's production company insurance coverage offerings over lunch.  Doc. #107 at 19:205–20:19 (McKinley).

5.      As a result of information received from McKinley, Megalomedia eventually submitted an application to Philadelphia Indemnity for coverage for a film-production insurance product.  Doc. # 107 at 21:16–23:8 (McKinley).

6.      In the application, Megalomedia was required to provide information about the "name and description for production(s) for which coverage is requested" as part of the general liability section.  Trial Ex. P-1 at PHLY 9671.  Megalomedia listed the productions *Heavy* and

*Quintuplets by Surprise* on its original application, identifying them as "reality based TV shows/documentaries." *Id.*

7.     Philadelphia Indemnity "approved" the applications as submitted, meaning that Philadelphia "quoted" and provided general liability coverage for *Heavy*, *Quintuplets by Surprise*, and two other productions.  Doc. #107 at 26:2–8 (McKinley); Trial Ex. P-1, P-5.  At the time, Philadelphia Indemnity was building its book of film production business, and the Megalomedia account was the first film production insurance policy (the "Policy") for its Austin office.  Trial Ex. P-5 at PHLY 6977.

8.     The Philadelphia Indemnity policies provided Megalomedia with coverage for a variety of risks over several coverage areas: general liability, commercial property, inland marine, and commercial auto.  *See* Trial Ex. P-116 at PHLY 16063; Doc. #109 at 21:24–22:4 (Costantini); *see also* Trial Exs. 119, 123, 128, 132, 135, 137, 141, 145.

9.     Although Philadelphia Indemnity's film-production product contained several forms of insurance, the focus of the film-production product was general liability coverage.  Doc. #107 at 134:3–21.  To Megalomedia, general liability was the "most important" type of insurance coverage offered by Philadelphia Indemnity because film production carried the most risk.  Doc. #108 at 16:3–12.

10.     The Film Production Additional Coverages Form in the Policy includes a provision that provides liability insurance for claims made against Megalomedia.  Trial Ex. P-116 at PHLY 16194, PHLY 16204–06; Trial Ex. P-119 at PHLY 16400; Trial Ex. P-123 at PHLY 16589; Trial Ex. P-132 at PHLY 17025.

11.    Under general liability Coverage B, Megalomedia was insured against certain potential claims that pose significant risks to production companies like Megalomedia. *E.g.,* Trial Ex. P-116 at PHLY 16149.

12.    The bases for the general liability premium charged by Philadelphia Indemnity to Megalomedia for all of the policies were Megalomedia's gross production costs. Doc. #109 at 17:2–12 (Costantini).

13.    In 2011, Megalomedia sought coverage for a new production, *Cartel City*. Trial Ex. P-10. *Cartel City* followed the "day-to-day life of the LaJoya Police Department." *Id.* Philadelphia Indemnity declined coverage for *Cartel City*. Trial Ex. P-14.

14.    Thus, there were pre-issuance determinations made by Philadelphia Indemnity's underwriters as to whether specific Megalomedia productions would be classified as "documentaries," and thus covered, or excluded from coverage based on their classification as "reality shows" under the "reality show" exclusion. *See* Trial Ex. P-13 ("This sounds more like 'cops' and more like a reality show then [sic] a documentary."); *see also* Doc. #109 at 70:11–20 (Costantini) (Philadelphia Indemnity underwriter testifying that it was her job to determine whether Megalomedia's productions fit Philadelphia Indemnity's "appetite").

15.    On June 3, 2011, in response to Megalomedia's denied application for *Cartel City*, Jennifer Costanini, an insurance underwriter for Philadelphia Indemnity, explained to her coworker via email that "We cannot add [*Cartel City*] and will add an exclusion for reality shows to the CG2153." Trial Ex. P-13. She then told that same coworker to "Please set up MTC to add wording to CG2153 'Excludes any/all reality shows.'" Trial Ex. P-14.

16.    In explaining why it was denying coverage for *Cartel City*, Philadelphia Indemnity distinguished *Cartel City* from Megalomedia's other productions, telling Megalomedia's

insurance broker: "We had underwriting review the info for this new project and their response was it sounds more like a reality show than a documentary so we are not going to be able to add it to the [P]olicy." Trial Ex. P-15.

17.     Going forward, Philadelphia Indemnity amended Megalomedia's existing Policy by adding an endorsement, form number CG2153, titled "Exclusion – Designated Ongoing Operations" (reality TV exclusion).  Trial Ex. P-116 at PHLY 16232–34.

18.     The reality TV exclusion provided that claims for "bodily injury" and "property damage" arising out of reality TV shows are excluded from coverage under the Coverage A section of the general liability coverage form.  *Id.* at PHLY 16234.

19.     The reality TV exclusion applied to only one part of one of the coverages provided by the general liability coverage form (Coverage A).  It had no effect on the inland marine, commercial property, commercial auto, or any other coverages provided by the package policies. Nor did it have an effect on the liability coverage provided by the Film Production Additional Coverages Form.  Doc. #107 at 79:3–21, 80:2–81:7; Trial Ex. P-116 at PHLY 16234.  *Id.*

20.     On June 6, 2011, Philadelphia Indemnity explained in an email to Megalomedia's broker how it considered *Cartel City* to be a reality show and distinguished it from Megalomedia's other productions.  In response to Megalomedia's protest that *Cartel City* was not a reality show but was instead a documentary, Stalnaker represented that Philadelphia Indemnity was "okay with the other work that [Megalomedia was] doing, just not this particular project [*Cartel City*]." Trial Ex. P-16.  This representation was made by way of an email communication with Megalomedia's insurance agent.  *Id.*

21.     In his June 6, 2011, email to Megalomedia's broker, Stalnaker listed the dangers inherent with *Cartel City* before stating that Philadelphia Indemnity was "okay" with

Megalomedia's other shows, meaning shows that Philadelphia Indemnity "had already written the policy for"—the four productions on Megalomedia's original Supplemental Application. Doc. #107 at 152:17–153:23 (Stalnaker).

22.     Megalomedia had no direct contact with Philadelphia Indemnity; all communication between Philadelphia Indemnity and Megalomedia was made through McKinley or one of his employees. Doc. #108 at 111:20–112:2, 138:20–22 (Westberry).

23.     Later that year, as Megalomedia was considering renewing its Policy with Philadelphia Indemnity, Megalomedia inquired about new language in its quote that stated the Policy's "intent" was not to cover reality shows. An email from one of Philadelphia Indemnity's account representatives, Melissa Relf ("Relf"), to its underwriter, Costantini, reflects that Megalomedia asked Philadelphia Indemnity about whether its Policy would cover Megalomedia's other productions in light of certain renewal quote language: "Please note it is not this [P]olicy's intent to cover film and production of TV series and film and production of reality shows." Trial Ex. P-20.

24.     Megalomedia subsequently provided a description of upcoming projects, including *Quints by Surprise*, which was listed on the original application. Trial Ex. P-24. The only show that Philadelphia Indemnity expressed a concern about was *Fugitive Recovery*, due to its similarity to *Cops. Id.*

25.     Consistent with the internal Philadelphia Indemnity emails, Westberry testified that McKinley "talked to someone at Philadelphia [Indemnity], and they had given him those same assurances" that Megalomedia's other shows were being covered. Doc. #108 at 71:23 – 72:15 (Westberry). Westberry was conveyed this information, relied on it, and continued to purchase

insurance from Philadelphia Indemnity as a result of these assurances.  *Id.* at 127:10–16, 142:22–143:14.

26.     Each year from 2011 to 2019, Philadelphia Indemnity offered to renew the Policy and sent Megalomedia an insurance proposal that contained the CG2153 reality TV exclusion, and Megalomedia accepted it each time.  Doc. #107 at 83:2–11, 84:12–19, 86:17–25, 94:18–22, 100:17–21, 103:22–104:9 (McKinley); Doc. #108 at 74:4–10 (Westberry).

27.     The proposals specifically advised Megalomedia that "[a]ny other coverage extensions, deletions, or changes requested in the submission are hereby rejected." Trial Ex. P-19 at PHLY 6002; Doc. #107 at 85:15–24 (McKinley).  McKinley understood that the information on the application did not determine the Policy's coverage; rather, the terms of the Policy determine the coverage.  Doc. #107 at 65:5–66:10.

28.     McKinley testified that he did not believe that Stalnaker intended to mislead Megalomedia.  Doc. #107 at 122:2–4.

29.     In the 2013 proposal for insurance sent to McKinley by Philadelphia Indemnity, Nowzaradan's signature appears directly beneath the paragraph that provides:

> No coverage is afforded or applied unless shown in this proposal. This proposal does not constitute a binder of insurance. This proposal is strictly limited to the terms and conditions herein. Any other coverage extensions, deletions, or changes requested in the submission are hereby rejected.

Trial Ex. P-43 at PHLY 5188; Doc. #107 at 85:15–24 (McKinley).  The final decision-making authority as to procuring insurance for Megalomedia rested with Nowzaradan.  Doc. #108 at 173:10–23 (Nowzaradan).

30.     Megalomedia's insurance applications were not immediately "approved" for coverage.  Instead, Philadelphia Indemnity would submit a proposal for insurance that Megalomedia could accept or reject.  Doc. #107 at 76:15–23, 74:17–75:3 (McKinley).

31.     At trial, Costantini testified that it was "completely immaterial" to Philadelphia Indemnity what shows Megalomedia listed on the supplemental application once a renewal policy was in place.  Trial Ex. P-30; Doc. #109 at 93:4–94:3.  But Philadelphia Indemnity *required* Megalomedia to submit a Supplemental Application to be considered for renewal.  Trial Ex. P-134 at 3 (stating that the quoted insurance was "subject to the following terms and conditions" and listing the following as "REQUIRED TO BIND: 1. Updated & Signed PHLY Film Production supplemental application").

32.     In 2013, Megalomedia sought coverage for its production, *Fugitive Recovery*, which followed U.S. Marshals tracking down fugitives.  Trial Ex. P-38.  Like *Cartel City*, Philadelphia Indemnity determined that it could not provide coverage for *Fugitive Recovery* due to the element of danger associated with the production.  Trial Ex. P-39.  Philadelphia Indemnity represented that the element of danger made *Fugitive Recovery* much different than Megalomedia's other productions, such as its weight-focused productions of *Heavy*, *Half-Ton Teen*, and *Half-Ton Mom*.  *See id.* ("Unfortunately, the US [marshals] show is much different [than the] prior shows such as 'Heavy' 'Half ton teen' 'Half ton mom' 'Tx Car Wars' 'Quints by surprise'").

33.     Consistent with Philadelphia Indemnity's internal emails, it provided this explanation to McKinley's office, who then communicated it to both Westberry and Nowzaradan, both of whom relied on this representation in continuing to review Megalomedia's policies with Philadelphia Indemnity.   Doc. #108 at 126:6–127:19 (Westberry); *Id.* at 155:11–156:1 (Nowzaradan).

34.     Neither Westberry nor Nowzaradan read any of the policies issued to Megalomedia.  Doc. #108 at 179:1–180:4 (Nowzaradan); Doc. #108 at 67:10–11 (Westberry).  Neither Westberry

nor Nowzaradan knew that the Policy contained the CG2153 reality TV exclusion until 2020.  Doc. #108 at 176:11–18 (Nowzaradan); Doc. #108 at 66:13–67:5 (Westberry).

35.     Philadelphia Indemnity's coverage decisions regarding *Cartel City* and *Fugitive Recovery* had no bearing on the existing policies issued to Megalomedia.  Doc. #107 at 121:8–23 (McKinley).

36.     The "denial of coverage" for *Cartel City* and *Fugitive Recovery* were denials of separate policies altogether.  Doc. #107 at 121:6–17 (McKinley).  There was no inland marine, property, auto or general liability coverage for either of those shows.  *Id.* at 121:15–23. Philadelphia Indemnity was still obligated to cover *My 600-Lb Life* for commercial property, commercial auto, inland marine, and general liability for "personal and advertising injury."  Doc. #114 at 10.

37.     In addition to the insurance that Megalomedia purchased from Philadelphia Indemnity, Megalomedia also carried production insurance mandated by the TV networks which ran Megalomedia productions.  Doc. #108 at 46:12–17 (Westberry).

38.     The network-mandated insurance policies purchased by Megalomedia also included general liability insurance. *E.g.*, Trial Ex. P-68 at PHLY 5892–5906.

39.     Unlike the Philadelphia Indemnity policies, the network-mandated policies were written on a production-specific basis.  Doc. #108 at 103:22–104:4 (Westberry).

40.     Megalomedia represented *My 600-Lb Life* as a reality show to the insurers that provided its network-mandated policies.  Trial Ex. P-162 at MEGA 1423.

41.     In November 2015 leading up to the renewal of the 2015–16 policy, Philadelphia Indemnity forwarded an underwriter's email to Megalomedia's agent, explaining that "[t]he Reality TV portion of this account is excluded on the CG2153."  Trial Ex. P-53; Doc. #107 at

91:12–23 (McKinley). Megalomedia still chose to renew the Policy. Doc. #107 at 92:19–93:1 (McKinley).

42.    Also as part of the renewal for 2015, Megalomedia's agent sent Philadelphia Indemnity certificates of insurance for *My 600-Lb Life* seasons 4 and 5, *My 600-Lb Life: Where Are They Now* season 2, and *Flab to Fit*. Trial Ex. P-46 at PHLY 6978, 9777; Doc. #107 at 87:24–90:6 (McKinley); *see also* Trial Ex. P-45. These certificates evince that Megalomedia carried general liability insurance for these shows. *Id.*

43.    For the 2015 renewal, Philadelphia Indemnity also told Megalomedia that "since we are not covering any of the reality TV, we need the gross production cost minus the reality TV figures." Trial Ex. P-56 at PHLY 5275; Doc. #108 at 86:2–7 (Westberry).

44.    Megalomedia originally represented that its gross production costs were $16,090,101. Trial Ex. P–54 at PHLY 7885; Doc. #107 at 120:6–23. In response to Philadelphia Indemnity's request for Megalomedia's total production costs less reality TV production, Megalomedia revised this number down to $3 million. Trial Ex. P–56 at PHLY 5274–75; Doc. #108 at 86:2–10 (Westberry). The $3 million number did not include any cost associated with *My 600-Lb Life*. Doc. #108 at 87:22–24 (Westberry). Specifically, the request was for gross production costs less the costs for reality TV productions, not for gross production costs less the costs for *My 600-Lb Life*. Trial Ex. P-56 at PHLY 5274–75.

45.    Likewise in 2016, Philadelphia Indemnity reminded Megalomedia's agent that the CG 2153 endorsement excludes coverage for reality TV projects. Trial Ex. P-66 at PHLY 09782; Doc. #107 at 95:1–18 (McKinley). Philadelphia Indemnity asked Megalomedia for proof of other general liability coverage for its reality TV shows and told Megalomedia that it could not bind the

Philadelphia Indemnity policies until this information was received.  Trial Ex. P-66 at PHLY 09782; Doc. #107 at 100:17–101:1 (McKinley).

46.      In response, Megalomedia sent Philadelphia Indemnity proof of general liability coverage for *My 600-Lb Life*.  Trial Ex. P-68 at PHLY 5895–96; Doc. #107 at 95:20–96:6, 101:2–25.

47.      Philadelphia Indemnity once again asked Megalomedia for its gross production costs less reality TV projects.  Trial Ex. P-67 at MEGA 290; Doc. #107 at 97:4–8 (McKinley).  McKinley knew that Philadelphia Indemnity wanted to know the gross production costs of the non-reality TV productions because gross production costs of covered productions is how Philadelphia Indemnity based its general liability premium.  Doc. #107 at 97:23–98:3 (McKinley).

48.      Like in 2015, the production cost Megalomedia reported to Philadelphia Indemnity for the 2016 renewal likewise did not include the production cost of *My 600-Lb Life*.  Doc. #108 at 93:24–94:4 (Westberry); *see supra* ¶ 44.

49.      The same thing happened in 2017, Megalomedia's agent sent Philadelphia Indemnity an email stating "Attached are the reality production certs," and attaching certificates for *My 600-Lb Life* seasons 6 and 7, *My 600-Lb Life Where Are They Now* season 4, and *Skin Tight*, season 3.  Trial Ex. P-77 at PHLY 8171, 8169, 8173–77;  Doc. #107 at 102:1–15 (McKinley); Doc. #108 at 95:10–96:1 (Westberry).  Megalomedia's agent received the certificates of insurance from Megalomedia before forwarding them to Philadelphia Indemnity.  Doc. #107 at 102:12–16 (McKinley); Doc. #108 at 96:2–9 (Westberry).

50.      Given the foregoing, including being specifically told about the CG2153 reality TV exclusion; being asked for certificates of insurance for reality TV shows and providing certificates of insurance for *My 600-Lb Life*; and being asked for gross production costs less reality TV shows

and providing costs excluding *My 600-Lb Life*, Megalomedia had constructive knowledge—or at the very least, should have known—of the unambiguous reality TV exclusion and the fact that *My 600-Lb Life* was considered a reality TV show.

51.     In 2020, several former participants of *My 600-Lb Life* sued Megalomedia, alleging that they suffered bodily injury as the result of their participation in the show.  Doc. #108 at 166:23–25 (Nowzaradan).  All of the lawsuits have since been dismissed except for one.  *Id.* at 167:1–2.

52.     After each lawsuit was filed, Megalomedia filed a claim with the network-mandated insurance it carried.  Megalomedia also reported the claims to Philadelphia Indemnity.  Doc. #108 at 54:14–24 (Westberry).  The Philadelphia Indemnity claims department, not any underwriter, determined whether the claim was covered.  Doc. #109 at 58:16–59:3 (Costantini); Doc. #68, Ex. 7 at 41:8–15, 49:22–25, 50:8–19, 52:13–53:1, 55:13–23.

53.     Philadelphia Indemnity denied Megalomedia's claims for defense and indemnity on each of the *My 600-Lb Life* lawsuits, based on the reality TV exclusion.  Trial Ex. P-167 at PHLY 2004.  Although Costantini testified that Philadelphia Indemnity never made a pre-claim determination about what shows were subject to the reality TV exclusion, it was shown during trial that Philadelphia Indemnity made a pre-issuance determination regarding *Cartel City*.  Doc. #109 at 59:23– 25, 67:11–18, 94:13–95:2 (Costantini); *see* Doc. #68, Ex. 7 at 41:8–15, 49:22–25, 50:8–19, 52:13–53:1, 55:13–23.

54.     Philadelphia Indemnity filed the subject lawsuit against Megalomedia as a declaratory judgment action on May 11, 2020.  Doc. #1.  The purpose of Philadelphia Indemnity's declaratory judgment action was to affirm its declination of coverage for the underlying *My 600-Lb Life* lawsuits based on the reality TV exclusion.  Doc. #1 ¶ 6.7.

55.     On November 23, 2020, Philadelphia Indemnity filed a Motion for Summary Judgment regarding its contractual duty to defend and/or indemnify Megalomedia in the underlying litigation.  Doc. #21.

56.     On May 28, 2021, Judge Vanessa Gilmore held that the reality TV exclusion was unambiguous, that it precluded coverage for the claims asserted in the underlying *My 600-Lb Life* litigation, and that Philadelphia Indemnity has no duty to defend or indemnify Megalomedia related to the underlying litigation.  Doc. #32.

57.     On June 1, 2021, Judge Gilmore entered a final judgment only to later set it aside to allow Megalomedia to pursue its counterclaims.  Doc. #33; Doc. #37.

58.     Megalomedia has paid Philadelphia Indemnity $326,976.24 in premiums.  Trial Ex. P-164.  Megalomedia has paid at least $1,053,851.21 defending the lawsuits brought by former *My 600-Lb Life* participants.  Trial Ex. P-160; Trial Ex. P-165.  Megalomedia has also incurred attorneys' fees in connection with this case in the amount of at least $534,948.91.  Trial Ex. P-159; Trial Ex. P-165.

### CONCLUSIONS OF LAW

a.      **Fraudulent Inducement**

59.     Texas law imposes a duty to abstain from inducing another into a contract through the use of fraudulent misrepresentations. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). Those elements include a showing that (1) a false material representation was made, (2) the representation was known to be false when it was made, (3) the false representation was intended to be acted upon, (4) the false representation was relied upon, and (5) the false representation caused injury. *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011).

60.     "A promise to do an act in the future is actionable fraud when made with the intention, design, and purpose of deceiving and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986); *see also* Doc. #80 at 7. A false promise can be the contract itself. *Id.* A material omission also can form the basis for a fraudulent inducement claim. *See Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 198 (5th Cir. 2016); *Williams v. WMX Tech.*, 112 F.3d 175, 177 (5th Cir. 1997).

61.     The elements of a claim for fraud by omission are the same as a claim for fraudulent inducement "with the exception that the misrepresentation element can be proven by omission of a material fact in light of a duty to disclose." *Smith v. BCE Inc.*, 225 F. App'x 212, 218 (5th Cir. 2007). Here, Megalomedia must establish that Philadelphia Indemnity had a duty to disclose a

14

material fact it alleges that Philadelphia Indemnity omitted for Megalomedia to prevail on its fraudulent inducement claim. *Id.*

62.     An insurer cannot determine whether it has a duty to defend before a claim is made because the duty to defend is determined by comparing the facts alleged against the insured with the provisions of the Policy. *See Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022); *Colony Nat. Ins. Co. v. Unique Indus. Prod. Co.*, 487 F. App'x 888, 891 (5th Cir. 2012).

63.     Likewise, an insurer cannot determine whether it has a duty to indemnify the insured before a claim is made because the duty to indemnify is determined by comparing the actual facts with the policy terms. *Monroe*, 640 S.W.3d at 199.

64.     Don Stalnaker's email of June 6, 2011 was a general statement that the Philadelphia Indemnity issued policy provided coverage, rather than a misrepresentation of specific policy terms. Trial Ex. P-16 at PHLY 05556. Philadelphia Indemnity had refused to issue policies for *Cartel City* and *Fugitive Recovery* in their entirety, while *My 600-Lb Life* was issued a policy that covered inland marine, commercial property, commercial auto, and Coverage B of general liability. *See supra* ¶¶ 19, 36. However, as a reality TV show, *My 600-Lb Life* was subject to the CG2153 reality TV exclusion for Coverage A of general liability. *See supra* ¶¶ 18–19. Thus, Stalnaker's email was not fraudulent. *Finger Oil*, 2023 WL 581650, at *3.

65.     Therefore, Philadelphia Indemnity made no misrepresentations of specific policy terms that could satisfy the essential elements of a fraud-based claim. *Finger Oil*, 2023 WL 581650, at *3; *Burton*, 869 F. Supp. at 486 (S.D. Tex. 1994).

66.     To sustain a fraud by omission claim, Megalomedia must establish that Philadelphia Indemnity omitted a material fact it had a duty to disclose. *Matter of Cyr*, 838 F. App'x 54, 62 (5th Cir. 2020); *Smith v. BCE Inc.*, 225 F. App'x 212, 218 (5th Cir. 2007).

67.     Philadelphia Indemnity had no affirmative duty to inform Megalomedia of what is and what is not covered by the Policy. *Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 486 (S.D. Tex. 1994), *aff'd*, 66 F.3d 319 (5th Cir. 1995); *Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 581 (W.D. Tex. 1999); *Burton*, 869 F. Supp. at 486; *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 392 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 836 (Tex. App.—Houston [1st Dist.] 1996, no writ).   Therefore, Philadelphia Indemnity cannot be held liable for fraud by omission for not explaining to Megalomedia that the CG2153 reality TV exclusion precludes coverage for "bodily injury" arising out of reality TV shows.

68.     The reality TV exclusion is unambiguous; it has only one reasonable meaning. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); Doc. #32 at 10.   It excludes coverage for the underlying claims asserted against Megalomedia in the *My 600-Lb Life* lawsuits. Doc. #32 at 10.

69.     Megalomedia has an affirmative duty to read the Policy, and the subsequent renewals, and is charged with notice of their provisions, including the unambiguous reality TV exclusion. *Morris Cty. Nat. Bank v. John Deere Ins. Co.*, 254 F.3d 538, 541 (5th Cir. 2001); *Hunton*, 243 F. Supp. 2d at 706.

70.     Because Megalomedia had actual knowledge that the CG 2153 reality TV exclusion was part of the Policy, and it had actual knowledge that *My 600-Lb Life* is a reality TV show, it

cannot have justifiably relied on any representation made (or alleged omission) by Philadelphia Indemnity.

71.     Under Texas law, if a policy covers any claim, it is not illusory. *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 515 (5th Cir. 2020).   Because the Philadelphia Indemnity policies did provide coverage for other types of claims, including general liability claims not subject to the CG2153 exclusion (Coverage B), commercial property, inland marine, and commercial auto, they were not illusory. *Balfour*, 968 F.3d at 515 ("An insurance policy is not illusory merely because it does not provide coverage for a claim the policyholder thought it would cover."); *E.g.*, Trial Ex. P-116 at PHLY 16063; Doc. #109 at 21:24–22:4 (Costantini); Doc. #107 at 67:23–68:3 (McKinley); *see also* Trial Exs. P-116, 119, 123, 128, 132, 135, 137, 131, 145.

72.     Because Megalomedia cannot satisfy the essential elements of fraud, fraudulent inducement, or fraud by omission/nondisclosure, Philadelphia Indemnity is entitled to a judgment in its favor on these claims.

**b.     Insurance Code and DTPA**

73.     The Insurance Code and the DTPA overlap to provide additional avenues to relief for insureds.   Under the Insurance Code, a person "who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice: . . . (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment." Section 541.151(2).

74.     An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed. *RSUI Indem. Co. v. The*

*Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).   The Insurance Code supplements the parties'

contractual rights and obligations by imposing procedural requirements that govern the manner in

which insurers review and resolve an insured's claim for policy benefits.  *See, e.g.*, TEX. INS.

CODE § 541.060(a).

75.    The Insurance Code "grants insureds a private action against insurers that engage

in certain discriminatory, unfair, deceptive, or bad-faith practices, and it permits insureds to

recover 'actual damages . . . caused by' those practices, court costs, and attorney's fees, plus treble

damages if the insurer 'knowingly' commits the prohibited act."  *USAA Tex. Lloyds Co. v.

Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018).  "Actual damages" under the Insurance Code "are

those damages recoverable at common law."  *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d

430, 435 (Tex. 1995).

76.    The elements of a Chapter 541 claim are: (1) the parties are each a "person" under

the Insurance Code; (2) the defendant engaged in an unfair act or practice listed in the code; and

(3) the unfair act or practice was the producing cause of actual damages.  *Molano v. Underwriters

at Lloyd's London*, No. DR-15-CV-003-AM-VRG, 2015 WL 13134484, at *5 (W.D. Tex. Apr. 8,

2015).

77.    The elements of a valid DTPA complaint are: (1) the plaintiff is a consumer; (2)

the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a

producing cause of the consumer's damages.  *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d

466, 468 (5th Cir. 2002).

78.    As stated previously (*see supra* ¶ 64), Don Stalnaker's email of June 6, 2011 was a

general statement that the Philadelphia Indemnity Policy provided coverage, rather than a

misrepresentation of specific policy terms.   Trial Ex. P-16 at PHLY 05556.   Philadelphia

Indemnity had refused to issue policies for *Cartel City* and *Fugitive Recovery* in their entirety, while *My 600-Lb Life* was issued a policy that covered inland marine, commercial property, commercial auto, and Coverage B of general liability. *See supra* ¶¶ 19, 36. However, as a reality TV show, *My 600-Lb Life* was subject to the CG2153 reality TV exclusion for Coverage A of general liability. *See supra* ¶¶ 18–19. Therefore, Stalnaker's email was not fraudulent. *Finger Oil*, 2023 WL 581650, at *3.

79.     Philadelphia Indemnity made no misrepresentations of specific policy terms that are actionable under the Insurance Code or DTPA. *Finger Oil*, 2023 WL 581650, at *3; *Burton*, 869 F. Supp. at 486 (S.D. Tex. 1994).

80.     Absent an affirmative misrepresentation that coverage exists in a specific situation, Megalomedia's mistaken belief about the scope of coverage is not actionable under the DTPA or the Insurance Code. *Finger Oil & Gas, Inc. v. Mid-Continent Cas. Co.*, No. 22-50432, 2023 WL 581650, at *3 (5th Cir. Jan. 27, 2023); *Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 486 (S.D. Tex. 1994), *aff'd*, 66 F.3d 319 (5th Cir. 1995).

81.     Generally, "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered," except for "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018) (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)).

82.     Because Megalomedia cannot satisfy the essential elements of its claim for violation of the Insurance Code, Philadelphia Indemnity is entitled to a judgment in its favor.

83.     Because Megalomedia cannot satisfy the essential elements of its claim for violation of the DTPA, Philadelphia Indemnity is entitled to a judgment in its favor.

84.    Any of the foregoing findings of fact which contain conclusions of law shall be deemed to be conclusions of law, and any of the foregoing conclusions of law which contain findings of fact shall be deemed to be findings of fact.

It is SO ORDERED.

_____
SEP  2 8  2023
Date

_____
The Honorable Alfred H. Bennett
United States District Judge